ELLIOTT *v.* THE ROSS CARRIER CO., INC., et al.

Feb. 15, 1954

No. 39104          53 Adv. S. 5          70 So. 2d 75

*J. J. Fraiser, Jr., Hardy Lott,* Greenwood, for appellant.

*Lipscomb & Ray,* Jackson, for appellees.

HOLMES, J.

This is an appeal from a judgment of the Circuit Court of the First Judicial District of Hinds County, reversing an order of the Workmen's Compensation Commission which affirmed an order of the attorney-

referee awarding to the appellant compensation under the Mississippi Workmen's Compensation Act.

On or about March 18, 1949, the appellant, while in the employment of the appellee, the Ross Carrier Company, Inc., sustained an injury to his back while repairing a lumber carrier and using a wrench to tighten a nut. It is admitted that the injury arose out of and in the course of appellant's employment and that at the time of his injury his average wages were $54.17 per week. Compensation for temporary total disability was paid until January 21, 1952, when the same was suspended, it being determined as of that date from the opinion of the doctors that appellant had attained the maximum improvement in his condition and that his disability was twenty-five per cent permanent partial disability.

The claimant requested a hearing by the commission to determine and fix the amount of compensation to which he was entitled subsequent to January 21, 1952. The matter was heard before the attorney-referee upon a stipulation of facts entered into between the parties, and the oral testimony of the claimant, which oral testimony of the claimant was admitted over the objection of the appellee.

The following stipulation of facts was entered into between the parties: "That on or about March 18, 1949, the claimant, Marion L. Elliott, while employed by the employer, The Ross Carrier Company, Inc., sustained an injury claimed to be an injury to the back while repairing a lumber carrier and using a wrench to tighten a nut; that said injury arose out of and in the course of his employment; that at the time of the said injury his average weekly wages were $54.17.

"The Commission file on this case is made a part of the record at this hearing the same as if it were offered in evidence by one or the other of the parties.

"On January the 21st, 1952, the claimant had attained maximum improvement, and it is stipulated and agreed

that the claimant was and is 25% permanently partially disabled. This rating of permanent partial disability, to wit, 25%, is agreed to by the parties and constitutes the basis for the decision of the Attorney Referee in this case.

"Having stipulated as to all of the essential facts, the question before the Attorney Referee becomes one of law, to wit, to make interpretation of Section 8 (c) (21) of the Workmen's Compensation Law.

"Payments as for temporary total disability were suspended as of January 21, 1952, and no payments as for permanent partial disability have been made for the reason that a controversy has existed between the claimant and the carrier acting through their respective attorneys as to what the correct interpretation of Section 8 (c) (21) would be. The interpretation contended for by the claimant would produce one award of a certain amount and the interpretation contended for by the carrier would produce a different award, and the purpose of this hearing is to seek the decision of the Attorney Referee as to the correct interpretation of Section 8 (c) (21) of the Workmen's Compensation Law in order that the amount of the award may be determined.

"It is expressly understood and agreed by and between the parties that the purpose of this stipulation as to the essential facts is simply to avoid the trouble and expense of taking testimony and by such stipulation neither the claimant nor the carrier shall be in any way prejudiced to petition for a review by the full commission of the decision of the Attorney-Referee or to appeal to the circuit court and/or the Supreme Court in event the decision of the Attorney-Referee is adverse to such party.

"Neither shall this stipulation prejudice whatever rights either the claimant or the carrier may have at any time in the future to seek a reopening of the case pursuant to provisions of Section 21 of the Workmen's

Compensation Law and subject to the conditions and limitations contained in such claim."

The claimant testified that he had had no earnings since January 21, 1952; that his support had come from his father and wife; that his principal work during the preceding five years had been "combination parts work and mechanic," which involved a great amount of physical toil and labor; that such character of work was the only work that he could do other than farming; that both types of work require bending of the body and lifting of heavy parts, which he was unable to do because of his injury; that his wife had purchased a grocery store with money which she earned from teaching school; that he went to the store at times and would undertake to wait on customers if his wife happened to be busy with other customers; that he was only able to do this character of work on an average of from two and a half to three hours a day, for two or three days a week; that his wife paid him nothing for his services; that if his wife had been required to pay someone else for the same service, it would have cost about 75c per hour; that he and his wife and family lived out of the grocery store; that he had tried to obtain the type of work that he could do but was unable to obtain the same; that after his injury he went back to work for the appellee employer but was laid off two weeks after he went back to work; that he tried to obtain a position as a salesman but was unable to do so.

It is to be noted from the stipulation of the parties that it was agreed that appellant's right to compensation should be determined in accordance with the provisions of Section 8 (c) (21) of Chapter 354 of the Laws of 1948. It is to be further noted that the parties recognize that the appellant's injury was not within the classification of specific losses such as the loss of an arm or foot or other member resulting in permanent partial disability as provided for in Section 8 (c) (1) to (20) inclusive of Chapter 354 of the Laws of 1948,

but that appellant's injury came within the classification of ''other cases'' provided for in said Section 8 (c) (21) of Chapter 354 of the Laws of 1948.

The sole question involved is the amount of compensation to which the appellant is entitled subsequent to January 21, 1952, under Section 8 (c) (21) of Chapter 354 of the Laws of 1948, which reads as follows:

''(21) Other Cases: In all other cases in this class of disability, the compensation shall be sixty-six and two-thirds per centum (66⅔%) of the difference between his average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this act, and his wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the commission on its own motion or upon application of any party in interest, and such payments shall in no case be made for a longer period than four hundred fifty (450) weeks.''

At the conclusion of the hearing before the Attorney-Referee, he found that the evidence introduced was to the effect that the claimant had sustained a loss of earnings each week since January 21, 1952, in excess of $37.50 as a result of his disability, and applying the maximum limitation of $25.00 as to weekly benefits, he held that the claimant was entitled to compensation benefits at the rate of $25.00 per week for the period of January 21, 1952, to September 8, 1952, and he entered his order accordingly, providing, however, ''that the right of claimant to further compensation benefits shall be predicated upon a showing by claimant that he has sustained a loss of earnings due to his said physical disability.'' It is to be observed, therefore, that the Attorney-Referee in his finding translated appellant's wage earning capacity after the injury into loss of weekly earnings.

On a review of the decision by the Attorney-Referee, his order was affirmed by a majority of the commission,

one member of the commission dissenting. On appeal to the circuit court, the decision of the Attorney-Referee and the commission was reversed and the amount of the compensation awarded by the Attorney-Referee was reduced.

██ ██ It is argued by the appellees that since the parties had undertaken to enter into a stipulation as to all of the essential facts, the oral testimony of the claimant was inadmissible and should not be considered. We think it was proper for the Attorney-Referee and the commission to consider this testimony if deemed by them relevant and material. ██ ██ Section 18 of Chapter 354 of the Laws of 1948 confers upon the commission full power and authority to determine all questions relating to the payment of claims for compensation and to make such investigation as it deems necessary, and upon application of either party, or upon its own initiative, to order a hearing.

██ ██ It is further argued by the appellees that since the parties stipulated that the claimant was and is 25% permanently partially disabled, and that such rating of permanent partial disability was agreed upon by the parties and was to constitute the basis of the decision by the Attorney-Referee, this was the equivalent of an agreement that appellant had suffered a 25% disability in his earning capacity. Appellees, therefore, contend that in arriving at the amount of compensation to be awarded the complainant, his earning capacity should be considered reduced 25% and that he thus retained 75% earning capacity. Appellees contend that since his earnings before the injury were $54.17 per week, this figure should be reduced by 75% or to the sum of $40.62, representing his earning capacity after the injury, and that this sum should be deducted from the sum of $54.17, leaving the sum of $13.55 as the difference between his average weekly wages and his wage earning capacity after the injury, and that thus the

claimant would be entitled to 66⅔% of $13.55, or the sum of $9.03 as the amount of his weekly compensation. The learned circuit judge adopted this formula. We think this was error.

It is clear that the 25% permanent partial disability referred to in the stipulation had reference to the physical or bodily disability of the claimant. Drs. Neal and Eddleman fixed the rate of disability after a physical examination of the claimant. Dr. Neal in his final report said: "On my last examination of Mr. Elliott, I felt that he had made maximum benefit from medical treatment and I would estimate his disability at 25%. I feel he has been given the benefit of every possible surgical procedure and adequate time for convalescence and that his case should be closed on this estimate of disability." It plainly appears, therefore, that the rate of disability had reference to the claimant's physical or bodily disability. There is nothing in the stipulation that could be construed as an agreement that the 25% disability was to be taken as a 25% disability in his earning capacity. Section 8 (c) (21), Chapter 354, Laws of 1948, names earning capacity as one of the factors in determining the amount of compensation. In arriving at appellant's compensation benefits, his earning capacity must be determined. This, however, will not necessarily appear from his actual earnings after his injury, although such may be of evidential value. That there is a distinct difference between earning capacity and actual earnings is pointed out in Larson's Workmen's Compensation Law, Vol. 2, Section 57.21, as follows:

"Degree of disability is calculated under most acts by comparing actual earnings before the injury with earning capacity after the injury.

"It is at once apparent that the two items in the comparison are not quite the same. Actual earnings are a relatively concrete quantity; rules for their measurement, for this purpose and for the general pur-

pose of fixing claimant's benefit level, are set out in a later section. Earning capacity, however, is a more theoretical concept. It obviously does not mean actual earnings, since the legislature deliberately chose a different phrase for the post-injury earnings factor. Even under those statutes which compare, for example, 'average monthly wages before the accident' with 'the monthly wages he is able to earn thereafter,' the test remains one of capacity. If the legislature had spoken of the wages 'he has earned thereafter,' or even the wages 'he has been able to earn thereafter,' the comparison of actual wage with actual wage would be indicated. But the concept of wages he 'is able' to earn cannot mean definite actual wages alone, especially in the absence of a fixed period of time within which post-injury wages are to be taken as controlling.''

While some of the authorities seem to hold that the comparative actual wage pay, that is to say, the wages earned before and after the injury, is the correct test, we have aligned ourselves, in view of the language of our statute, with the contrary view. In the case of Karr v. Armstrong Tire and Rubber Company, 216 Miss. 132, 61 So. 2d 789, we held that the fact that the claimant received higher weekly wages after the injury than he was receiving at the time of the injury was not in itself determinative of the question whether his physical disability had so impaired his wage earning capacity as to be compensable. We further held that in determining wage earning capacity of the claimant after the injury a number of factors, in addition to actual pay received by the claimant when injured as compared to earnings thereafter, should be considered, including increase in general wage levels since the accident, the claimant's own greater maturity or training, longer hours worked by the claimant after the accident, the payment of wages disproportionate to the claimant's capacity out of the employer's sympathy for the claimant, and temporary and unpredictable character of post-

injury earnings. In the Karr case, it was shown that the physical disability of the claimant was referable to his voice and that his wages after the injury were actually higher than the wages which he received before the injury, and we held that this did not necessarily show that he had suffered no disability in his wage earning capacity. The basis of this decision was that our statute does not test the earning capacity by the comparative wages received by the claimant before and after the injury. In the Karr case, we said:

"Our statute does not test the earning capacity by the comparative wages received by applicant before and after the injury. It is not a comparison of actual wage with actual wage. The benefits are figured on a percentage of applicant's average weekly wages at the time of the injury as compared to 'his wage-earning capacity thereafter in the same employment or otherwise * * *.' Chapter 354, Sec. 8 (c) (21) General Laws of Miss. 1948. In determining the wage-earning capacity of claimant after the injury a number of factors are to be considered in addition to the actual pay received by him when injured as compared to his actual earnings thereafter."

We think that the Karr case, supra, has definitely determined the interpretation to be placed upon Section 8 (c) (21), Chapter 354 of the Laws of 1948, and has definitely determined the formula by which the amount of compensation benefits is to be fixed. In the case at bar, it was necessary to determine the earning capacity after the injury. The undisputed proof is that his injury was such that he could earn nothing in his former employment, or in doing the work of a farmer, because of his injury; that he tried to get employment as a salesman or in some type of work that he was able to do but was unsuccessful in obtaining such employment; that the value of the only work which he had done or was able to do since his injury was 75c per hour for three and one-half hours for a maximum of three days a week, or a total of $7.87 per week. To allow appellant com-

pensation at the weekly wage of $25.00 would be a reduction in his earning capacity of more than fifty per cent compared with his weekly earnings prior to the injury, and we are unable to say that the finding of the Attorney-Referee as affirmed by the commission as to appellant's disability and wage earning capacity was manifestly wrong.

It is argued that to uphold the decision of the Attorney-Referee as affirmed by the commission would enable the appellant to recover as much compensation as though he had sustained total permanent disability or temporary total disability. We think this would not necessarily follow. Under the statute, the payments of award are to continue during the continuance of partial disability and are subject to reconsideration of the degree of impairment by the commission on its own motion or upon the application of any party interested. The payments, therefore, may or may not continue according to developments in the degree of the claimant's impairment. If the same degree of impairment continues, then, of course, the statute as written must apply.

Our conclusions are not at variance with the case of W. M. Nolin v. Mississippi Chemical Company and Liberty Mutual Insurance Company, No. 39,041, decided February 1, 1954. That case dealt with a different provision of the statute where a different formula was required in arriving at the amount of compensation.

It follows from the views hereinbefore expressed that the judgment of the circuit court should be and it is: reversed, and the order of the Attorney-Referee as affirmed by the commission is reinstated, and the cause is remanded, preserving to the claimant the right to further compensation for the period subsequent to September 8, 1952, upon a proper showing by the claimant that he is entitled thereto under the provisions of Sec-

tion 8 (c) (21) of Chapter 354 of the Laws of 1948, as herein interpreted.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Lee,* and *Ethridge, JJ.,* concur.