ROLING *v.* HATTEN AND DAVIS LUMBER Co., et al.

No. 39799 February 13, 1956 85 So. 2d 486

*W. S. Murphy,* Lucedale, for appellant.

*Eaton, Cottrell & Galloway,* Gulfport, for appellees and cross-appellants.

ARRINGTON, J.

From a judgment of the Circuit Court of Jackson County reversing an order of the Workmen's Compensation Commission awarding appellant compensation for permanent and total disability, and reinstating the order of the attorney-referee allowing partial disability benefits, the appellant appeals and the appellee cross-appeals.

The record discloses that on October 16, 1950, George Roling, claimant and appellant here, while working for Hatten and Davis Lumber Company, was seriously injured as a result of being crushed between two logs. Voluntary compensation payments were made by the carrier until February 23, 1951, at which time claimant had

reached maximum recovery. The employer and insurance carrier requested a hearing which was held on April 23, 1951. The claimant, George Roling, was present but was not represented by counsel. The attorney-referee, at the conclusion of the hearing, found that the claimant was injured in an accident arising out of and in the course of his employment; that he had suffered a fifty percent disability to his back; that his average weekly wage was $30.00; and that claimant was entitled to compensation benefits at a weekly rate of $20.00 for a period of 225 weeks. No appeal was taken from this order.

The insurance carrier made payments accordingly until April 18, 1954, at which time the insurance carrier filed a petition with the Commission asking for a redetermination of liability under Section 6998-27, Mississippi Code of 1942. Upon this hearing, on June 29, 1954, the attorney-referee found that the claimant's wage earning capacity had not changed as a result of the injury sustained on October 16, 1950, but was of the opinion that the wage earning capacity of the claimant should have been fixed at thirty-five percent rather than fifty percent. From this order, both sides petitioned for a review by the full Commission, and on September 9, 1954, the Commission found that the award dated April 26, 1951 was based on a mistake in the determination of the facts; that the order of June 29, 1954 was also in error; that the first order should be set aside, the second reversed, and an order entered effective February 24, 1951, adjudging that claimant suffered a hundred percent loss of earning capacity, and that he was permanently and totally disabled. The Commission awarded payments to the claimant of $20.00 per week, effective February 24, 1951, and continuing until the amount of $8,600 has been paid. From this order, the appellees appealed to the Circuit Court of Jackson County, which court reversed the order of the full Commission and reinstated the order of the attorney-referee of June 2, 1954.

The record reveals that the appellant was 64 years of age at the time of the second hearing; that he is uneducated, and the only way he has to make a living is by manual labor. He testified that his back still hurts him, that he can not stoop and pick up objects and when he walks his back hurts so that he is unable to work. According to the record, the attorney-referee had the medical reports of Drs. Wessler, Frank G. Gruich, and Thos. H. Blake, at the first hearing. Dr. Blake, an orthopedic surgeon, in his report of February 23, 1951, stated that the claimant's forward bending motion "is limited to about 50%, and back bending is limited about 60%," and, in his opinion, the "patient has at least a 50% disability due to a combination of his rather extensive arthritic or rheumatism in the back, plus his age, and the recent injury, which would exaggerate the pre-existing condition."

Dr. Blake reported to the Workmen's Compensation Commission on April 13, 1951, that, in his opinion, claimant has "a 50% permanent disability."

Dr. Frank G. Gruich, on the surgeon's report of injury dated November 8, 1950, stated: "Findings: Patient unconscious for 45 minutes, was paralysis, right half of body for 16 hours. Patient complained of severe pain in chest, back and legs. Patient has kidney complication from injury. Examination of the pelvis fails to reveal a fracture." On February 23, 1951, Dr. Gruich reported with reference to claimant's condition as follows: "My diagnosis: 1. Paralysis of right side (arm and leg) caused by blow, discharged as having no residual sympton. 2. Marked contussion of—right side—improved, right arm — improved, right back — improved, right leg—improved. 3. Hematuria, cause unknown—improved. 4. Arthritis, of lumbar-sacral and pelvic bone (joints) aggravated by blow, patient developing Scoliosis. It seems to me that this individual will not be able to perform the same kind of work he did before the in-

jury. He explained to me, he is unable to lift anything without having pain in his right side and back. I believe this individual was 100% total disable up to the time he was discharged from the hospital, and now, I believe he is from 60-75% *permanent disable.*

As far as the record shows, it was on these two medical reports that the attorney-referee found that the claimant was 50% disabled.

On the second hearing, Dr. Griffin Bland, an ortheopedic surgeon, made a medical report to the insurance carrier as to Roling's condition. His report, in part, is as follows: ". . . X-rays revealed a very marked developmental scoliosis in the lumbar region convex to the right with extensive old hypertrophic arthritis. Arthritic changes are noted in the sacroiliac joints especially on the right. No fractures are noted in the pelvis, lumbar spine or hips. A well healed fracture of the right fibula at the neck is also noted.

"In my opinion this man should not be employed at heavy labor requiring a large degree of agility. On the basis of the history given me and the physical findings and the appearance of his x-rays as compared with x-rays made at the Biloxi Hospital in 1950 and later, I am unable to determine whether this man has any disability due to his original accident in 1950. All of the symptons stated to me could be on the basis of the curvature of the spine and the hypertrophic arthritis present in the spine. This arthritis was certainly present prior to the time of his accident as is revealed by the x-rays taken at the Biloxi Hospital in October 1950."

Dr. Bland was introduced by the appellee on the second hearing and testified at length with reference to Claimant's condition. His testimony was to the effect that the claimant had arthritis prior to the 1950 injury; that he would not have certified the appellant to do logging work prior to 1950. As to whether or not the injury aggravated his condition, he testified as follows:

"Q. In short, that was a result of, or grew out of—the arthritic condition was aggravated by the injury in 1950, and there has been no marked change, is that correct? A. In answer to that question, there is no marked change as far as I could determine between the X-ray appearance in 1954 and the X-ray appearance in 1950. In reply to your question concerning the aggravation, I am not in a position to say from my examination whether it was aggravated or not."

It will be recalled that the claimant was injured in 1950, and that Dr. Bland did not examine him until 1954. In comparing his condition as of 1950 and the present time, he testified: "I'm not in a position to compare this man's physical condition in 1950 with his physical condition now. If I had made a rating of 50% disability in regard to light manual labor at that time, I'd have to reduce it to practically zero for light manual labor at this time; but I would still have to stand on my statement that his condition as of that time I saw him would not enable me to advise him to do the type of logging work at which he was employed in 1950."

The record also reveals that the claimant was employed with A. Picard, Inc., and while tonging logs on October 31, 1953, he sustained a second injury, for which he received compensation. It was stipulated that the approximate dates on which the claimant worked for Picard were: "January 14-February 25, 1953; April 15 to May 20, 1953; September 3 to October 21, 1953." It was shown that the claimant was earning $36.00 per week and, in addition thereto, was paid for hauling six other laborers to and from their work. While employed by Picard, he was furnished men to help him with his work. His testimony, which is undisputed, is as follows:

"Well, in transferring the boys down there, as I went down that way I'd have to stay all day long and sit in the truck, so they asked me about tonging logs. I told them I wasn't able to, and they said, 'do the best you

can and we'll get somebody to help you.' I said 'I ain't
no account, I ain't able to do it.' They said, 'do the best
you can' and I said, 'Okay.' And I went on out there,
to keep from transferring the boys home by myself on
my own expenses, I went on and went to work.''

From the foregoing summary of the evidence,
which is without substantial conflict that claimant was
unable to perform manual labor and do the work he
was doing at the time of his injury, we are of the opinion
that the circuit court erred in reversing the Commission
and in reinstating the order of the attorney-referee. The
finding of the Commission was supported by ample and
substantial evidence and we would not be warranted
under the decisions of this Court in setting it aside.
Barry v. Sanders Co., 211 Miss. 656, 52 So. 2d 493;
Deemer Lumber Co. v. Hamilton, 211 Miss. 673, 52 So.
2d 634; Thornton v. Magnolia Textiles, Inc., (Miss.) 55
So. 2d 172; Fischer v. Gloster Lumber, etc., Co., (Miss.),
57 So. 2d 871; T. H. Mastin & Co. v. Mangum, 215 Miss.
454, 61 So. 2d 298; and Mississippi Products, Inc. v.
Gordy, 80 So. 2d 793.

But the appellee contends that if the claimant is now
disabled from pursuing his work it is because of his ar-
thritis and as a result of his second injury, a broken
leg received while working for A. Picard. Drs. Blake
and Gruich in their reports stated that claimant's ar-
thritis was aggravated by his injury. Dr. Bland's testi-
mony was that he could not say, however, he did testify
to the fact that he could not find any evidence that would
enable him to say that his injury to his right leg in
1953 had affected him as far as his back was concerned.

In Ingalls Shipbuilding Corporation v. Byrd, 215 Miss.
234, 60 So. 2d 645, this Court held: '' 'Pre-existing
disease or infirmity of the employee does not disqualify
a claim under the ''arising out of employment'' require-
ment if the employment aggravated, accelerated, or com-
bined with the disease or infirmity to produce the death

or disability for which compensation is sought.' Larson's Workmen's Compensation Law, Vol. 1, Sec. 12.20, p. 170.'' This rule has been consistently followed and approved by this Court in many cases.

 █ In the case of Karr v. Armstrong Tire and Rubber Company, et al, 216 Miss. 132, 61 So. 2d 789, this Court with reference to earning capacity said: ''Our statute does not test the earning capacity by the comparative wages received by applicant before and after the injury. It is not a comparison of actual wage with actual wage. The benefits are figured on a percentage of applicant's average weekly wages at the time of the injury as compared to 'his wage-earning capacity thereafter in the same employment or otherwise. . .' Chapter 354, Sec. 8 (c) (21), General Laws of Mississippi 1948. In determining the wage-earning capacity of claimant after the injury a number of factors are to be considered in addition to the actual pay received by him when injured as compared to his actual earnings thereafter.''

This rule was followed and reaffirmed in the case of Elliott v. Ross-Carrier Company, Inc., et al., 220 Miss. 86, 70 So. 2d 75.

In Larson's Workmen's Compensation Law, Vol. 2, Sec. 57.00, we find the following:

''Total disability may be found, in spite of sporadic earnings, if the claimant's physical condition is such as to disqualify him for regular employment in the labor market. Conversely, when the claimant is unable to obtain employment because of his physical condition, medical evidence that he could perform such work if he could get it will not detract from his status of total disability.''

Section 57.51 of the same text states:

'' 'Total disability' in compensation law is not to be interpreted literally as utter and abject helplessness. Evidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work does not

necessarily rule out a finding of total disability nor require that it be reduced to partial. The difficulty, of course, is to phrase a rule delimiting the amount and character of work a man can be able to do without forfeiting his totally-disabled status. The rule followed by most modern courts has been well summarized by Justice Matson of the Minnesota Supreme Court in the following language:

'An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.' "

 Under the facts and circumstances of this case, we are of the opinion that under the conditions with reference to the claimant's work with A. Picard and Company and notwithstanding his employment, he was entitled to compensation for permanent and total disability.

 In the case of M. T. Reed Construction Company, et al v. Martin, 215 Miss. 472, 61 So. 2d 300, we held that one may be totally disabled notwithstanding the fact that he occasionally is able to perform some single act connected with his business, but by reason of his injury is prevented from doing the substantial acts required of him in his employment, which holding was reaffirmed in Lucedale Veneer Company v. Keel, 79 So. 2d 233, and Modern Laundry, Inc. and New Amsterdam Casualty Co. v. Williams, 79 So. 2d 829.

 The appellee, in his cross-appeal, contends that neither the attorney-referee, the Commission, nor the circuit court has the power to make a new finding increasing disability retroactive in its effect to the original date of the injury so as to change the percentage of disability found in a previous order of the Commission not appealed from contending that the finding of disability of the attorney-referee at the first hearing was a factual

finding, and when not appealed from, became res judicata as to the facts therein found.

Section 6998-27 of the Mississippi Code of 1942, provides as follows: ''Upon its own initiative, or upon the application of any party in interest on the ground of a change in conditions or because of a mistake in a determination of fact, the commission may, at any time prior to one (1) year after date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one (1) year after the rejection of a claim, review a compensation case, issue a new compensation order which may terminate, continue, reinstate, increase or decrease such compensation, or award compensation. Such new order shall not affect any compensation previously paid, except that an award increasing the compensate rate may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, an award decreasing the compensation rate may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such method as may be determined by the commission.''

We are of the opinion that there is no merit to this contention, as the statute is clear and unambiguous, and makes possible a determination or re-determination of the degree of the injury at anytime short of the running of the period of limitation.

In view of the above, the order of the circuit court is hereby reversed and the finding of the Commission is reinstated and affirmed, and the cross-appeal is affirmed.

Reversed on direct appeal, affirmed on cross-appeal, and remanded.

*McGehee,* C.J. and *Kyle, Ethridge* and *Gillespie,* JJ., concur.