### FELDKAMP v. COAST CITIES COACHES, Inc., et al. (No. 2).

Industrial Commission.

April 6, 1956.

Richard H. M. Swann, Holladay & Swann, Miami, for claimant.

Richard F. Ralph, Jr., Fowler, White, Gillen, Yancey & Humkey, Miami, for the employer and insurance carrier.

JAMES T. VOCELLE, Chairman and WALTER L. LIGHTSEY, Commissioner.

This cause came on to be heard upon application of the employer and carrier for review of a deputy's order dated June 17, 1955 finding that it is for the best interests of the claimant that he receive a lump sum payment of compensation for the purpose of establishing a boys' camp in North Carolina, and ordering that the employer through its carrier pay claimant in a lump sum an amount equal to 350 weeks compensation at $35 per week, subject to the statutory discount, and less the lump sum advance of $4,000 previously paid claimant under a prior order, and less any other payments theretofore made to claimant as compensation for permanent disability.

Claimant was injured by accident arising out of and in the course of his employment with the employer on March 31, 1952 when he was involved in a bus-automobile accident which caused him to suffer a severe concussion of the brain with possibly a small subdural hemorrhage, resulting in a condition diagnosed as a post-concussion syndrome. The employer and carrier began payment of compensation from April 4, 1952, at $35 a week on the basis of claimant's average weekly wage of $86, and provided the claimant with remedial attention.

On February 19, 1953, the claimant by letter petitioned for "a lump sum settlement." After a hearing, the deputy entered an order on May 20, 1953 finding that as a result of the accident the claimant suffered severe concussion, bringing on cortical atrophy, as a result of which he is totally disabled, and ordering the employer by its carrier to pay him compensation for temporary total disability to March 31, 1953, when he reached maximum degree of medical

recovery, to pay him a lump sum in the amount of $4,000 to apply on compensation for permanent total disability, such payment to be considered an advance of the last payments of compensation payable to the claimant, to pay compensation for permanent total disability at the rate of $35 a week commencing March 31, 1953, and to pay his attorney a fee of $250 for services in connection with the petition for lump sum payment.

The employer and carrier filed an application for review of this order by the full commission, contending, inter alia, that the claimant is not permanently and totally disabled. On September 14, 1953 the full commission entered an order modifying the deputy's order dated May 20, 1953, to provide that if the claimant accepts the lump sum payment of $4,000, same shall be deemed an advance of the first $4,000 of compensation payable to him for his permanent total disability, and that he be given an opportunity to elect whether to accept such advance or to receive regular payments in due course as they become due. By this order the full commission affirmed the deputy's findings that the claimant is permanently totally disabled, and awarded a fee of $325 to his attorney for services before the full commission. The claimant elected to and did receive the lump sum payment of $4,000, less statutory discount.

By letter dated February 19, 1954 claimant petitioned for a lump sum settlement of all compensation due. After a hearing on this request, the deputy entered an order dated June 19, 1954, reaffirming the finding that he is permanently totally disabled, and finding that it is to the best interests of the claimant that he be paid an additional lump sum payment of compensation in the amount of $11,000, and ordering that the employer and carrier pay him such lump sum of $11,000—in addition to the $4,000 previously allowed and paid. The employer and carrier filed an application for review by the full commission, and the claimant filed a cross-application for review. The full commission entered an order on November 10, 1954 finding that there was insufficient evidence in the record that a lump sum payment of $11,000 was for the best interests of the claimant, and remanding the cause to the deputy for further consideration if and when the claimant presented a definite plan for the use of the money for his best interests. We also ordered the deputy to explore the possibilities with respect to the furnishing of rehabilitation service for the claimant.

After further hearings pursuant to our order the deputy entered an order on June 17, 1955 finding that the claimant had a definite plan for the establishment of a boys' camp in North Carolina, that it is for the best interests of the claimant that he receive a lump sum payment of compensation for use in establishing such boys'

camp, and ordering that the employer through its carrier pay him a lump sum equal to compensation for 350 weeks at $35 per week, less the lump sum advance of $4,000 previously paid under a prior order, and less any other compensation theretofore paid him for permanent disability. In explaining his limitation of such lump sum payment to an amount which would not cause the total payments made to the claimant to exceed the compensation payable to him for 350 weeks, the deputy pointed out—"there is a possibility that claimant may improve to the extent that he would not be permanently and totally disabled, and therefore would not be entitled to the full seven hundred weeks; claimant fully understands this, as was explained by the deputy, and fully realizes that should he show an occupational potential, that he then in that case perhaps will not be permanently and totally disabled."

On June 27, 1955 the employer and carrier filed an application for review by the full commission of the deputy's order dated June 17, 1955—and it is this order which is now before us for review. The application sets forth several grounds, including that the deputy erred in finding that claimant's plans to establish a boys' camp in North Carolina is for his best interests. After oral arguments were heard before the full commission on October 17, 1955, the commission referred the case to its chief of rehabilitation for an investigation with respect to the over-all feasibility of the proposed project and with respect to other possible projects more adaptable to claimant's situation and circumstances. After a full and complete investigation of all factors involved, the chief of rehabilitation submitted a report recommending claimant be sent to the Institute for the Crippled and Disabled in New York for a three weeks' vocational evaluation program. After consulting with counsel for claimant and counsel for the employer and carrier, we entered an interlocutory order on January 16, 1956, reciting that the $4,000 payment theretofore advanced in a lump sum covered compensation to January 18, 1956; that the carrier, through counsel, had agreed to resume compensation payments as of January 18, 1956, and to advance the costs necessary to send the claimant to the Institute for the Crippled and Disabled in New York for the recommended evaluation program, provided the commission would reserve determination of all issues until after such evaluation and assure the carrier that all such payments and advances would be properly credited to the carrier; and ordering that the carrier resume payments to the claimant of $35 per week as of January 18, 1956, and continue same until further order of the commission, advance all costs in connection with sending the claimant to the said institute for the recommended evaluation program, and specifically reserv-

ing jurisdiction with respect to all issues in this cause until after completion of such evaluation program and receipt by the commission of the report of the institute with respect to same.

Pursuant to this order of the full commission claimant reported to the Institute for the Crippled and Disabled, Insurance Rehabilitation Unit, and submitted to examinations and interviews by staff personnel, which included medical evaluation, psychological testing, psychiatric screening, social study, speech screening, vocational evaluation, and vocational counselling. The doctor who made the neurological examination reported that claimant is suffering from "post-concussion syndrome, severe." The doctor who made the physical examination reported that claimant is suffering from "post-concussion syndrome with question of cerebellar deficit," as a result of which he has loss of balance and is rather poor in coordination. The written report of the chief coordinator of the Insurance Rehabilitation Unit, addressed to the chief of rehabilitation, Florida Industrial Commission, together with the written reports of the doctors who made the neurological and physical examinations, have been carefully considered by the full commission and are hereby made a part of the record in this cause. Copies of these reports have been heretofore furnished to counsel for the parties.

The said report includes findings that claimant cannot adjust to detailed confining situations such as might be required by a desk job; that his idea for a business of his own seems a good one; that he apparently has a plan well thought out and with the help of his wife and friends would probably be successful; that he appears to be a very sincere person who is well motivated toward independence providing the right spot can be found for him; that although unable to perform fine, detailed work involving close concentration and fine movements, in an office procedure class he exhibited ability to organize work on a superior level, using excellent judgment; that some business of his own, such as the proposed boys' camp, would be the best plan for him, provided he can secure the services of a capable and reliable manager; and that erecting the buildings, maintenance, salaries and promotion are estimated to require about $11,000 for the first year.

This report confirms the report of the chief of rehabilitation, of this commission, dated November 15, 1955, heretofore filed in this cause and hereby made a part of the record thereof, which concluded by recommending that the claimant be awarded a lump sum payment of $11,500 to be invested in the establishment of the proposed boys' camp, or, in the alternative, that he be sent to the said

institute for its three weeks' vocational evaluation program and recommendation. The latter has been done, with the results above recited. In his report the chief of rehabilitation stated, among other things, that the proposed project is not a hastily thought of proposition to secure money; that claimant has good assurance that the boys' camp will offer him economic security if he can secure the necessary funds to establish it; that he has the promise of boys to fill the camp and of personnel to construct and operate it; that it will take $11,500 to undertake the project with reasonable expectation of success; that the individual who has offered to lease claimant the land for the camp is motivated by a desire to assist claimant rather than by any idea of personal gain; and that the proposed director of the camp is experienced in this field, well suited to direct the construction and operation of the project, and is motivated by a desire to assist the claimant as well as to return to the field of work he likes best. In his order of June 17, 1955, now under review, the deputy found that the proposed director of the camp is eminently qualified, and that—"inasfar as Mr. Mason would be the actual director and Mr. Feldkamp, being disabled as has been already determined by this commission, would have no responsibility other than the handling of money, it is the feeling of the deputy that this camp could properly be operated and established if sufficient funds were available."

Since it has been determined and adjudicated that claimant is permanently and totally disabled, and since the investment of funds by the claimant in a business enterprise to be owned by him but managed through an employed director would not alter his status of permanent total disability, we consider that the deputy erred as a matter of law by including in his said order his opinion that—". . . in fairness to the carrier, however, as was pointed out in the original full commission order, the undersigned deputy does not feel that he should jeopardize the insurance carrier by granting or allowing a lump sum payment in excess of the balance that would be due to the claimant, representing a full 350 weeks, inasfar as there is a possibility that claimant may improve to the extent that he would not be permanently and totally disabled, and therefore would not be entitled to the full 700 weeks; claimant fully understands this, as was explained by the deputy, and fully realizes that should he show an occupational potential, that he then in that case perhaps will not be permanently and totally disabled." "Disability" means incapacity because of the injury to *earn* in the same or any other *employment* the *wages* which the employee was receiving at the time of the injury, section 440.02(9), Florida Statutes 1955. On the face of the record it appears that claimant is incapable of earn-

ing wages in employment. Income from an investment, even though he participated in the management of that investment, would not constitute "wages" earned in "employment" within the meaning of the definition of "disability" as contained in the Act. Larson's Workmen's Compensation Law, vol. 2, secs. 57.00, 57.01; M. T. Reed Const. Co. v. Martin (Miss.), 61 So. 2d 300, 63 So. 2d 528; Roling v. Hatten and Davis Lumber Co. (Miss.), 85 So. 2d 486.

Section 440.49(3) of the Act provides that in cases involving total disability adjudged to be permanent the commission shall determine whether there is a reasonable probability that with appropriate training or education the injured employee may be rehabilitated to the extent that he can become gainfully employed and whether it is for his best interests to undertake such training or education. In investigating whether it is for the best interests of claimant to receive a lump sum payment for investment in a boys' camp, the chief of rehabilitation also evaluated the reasonable probability that with appropriate training or education he might be rehabilitated to the extent that he can become gainfully employed. In this connection he reported that claimant could not be trained as a watchmaker because he cannot coordinate the use of his hands to the extent necessary for such work, and that there is no reasonable probability that he could qualify for bookkeeping in view of his nervousness, visual defects, handwriting, and headaches from detailed or confining work. After considering these and other possibilities, he concluded—"For any person to secure employment he must have a skill, a function or an activity which the employer needs and will buy. This claimant has none," and recommended the lump sum payment because it would allow claimant to make an "investment" which would provide "dividends" reasonably estimated to exceed the $35 per week he is entitled to receive as compensation. This conclusion that there is no reasonable probability that with appropriate training or education claimant might be rehabilitated to the extent that he can become "gainfully employed" is supported by the findings reported by the Institute for the Crippled and Disabled. Accordingly, there is no reason from the standpoint of probability of future gainful employment to limit the lump sum advance payments of compensation to claimant to a total amount which will not exceed compensation for 350 weeks.

The deputy found that it is for the best interests of claimant to receive a lump sum payment of compensation for investing in the proposed boys' camp. This finding is supported by competent substantial evidence, and further substantiated by the investigation and evaluation made subsequent to the application for review now before us. It has been established, however, that claimant will need

$11,500 to reasonably assure the success of this investment, and as a matter of law there is no reason for limiting the lump sum payment to a lesser amount. In our order of January 16, 1956 we ordered the carrier to advance all costs of the evaluation program for claimant at the Institute for the Crippled and Disabled in New York City, but reserved jurisdiction to determine whether such costs should be borne by the carrier or by the commission. Section 440.49 (1), supra, authorizes the commission to expend monies from its administrative fund in connection with vocational rehabilitation. Considering both the purpose and the results obtained from the evaluation provided claimant at the said institute, we find that the costs thereof should be borne by the commission.

Having considered the cause upon the record, briefs and argument of counsel, and it appearing that the deputy's findings of fact, except with respect to limiting the lump sum payment to an amount which together with prior advances and payments will not exceed compensation for 350 weeks, are supported by competent substantial evidence which accords with logic and reason, and that his order accords with the essential requirements of law, it is ordered that the paragraph of the order pursuant to which the employer through its carrier is ordered to pay claimant a lump sum payment of compensation equal to the difference between compensation for 350 weeks and the compensation previously advanced or paid to him for permanent disability is modified to read as follows—

"1. Pay unto the claimant, Louis Feldkamp, a lump sum payment of compensation for permanent total disability in the amount of $11,500 subject to the statutory discount, as a charge against future payments of compensation on account of his permanent total disability; and continue to pay to claimant compensation at the rate of $35 per week during the continuance of such total disability, until the total of all payments to him for permanent total disability, including advances, is an amount equal to compensation for 700 weeks or until further order of the commission."

and that as so modified the order dated June 17, 1955 is affirmed.

It is further ordered that the employer by and through its carrier pay to claimant's attorneys, Holladay & Swann, the sum of $325 as a reasonable fee for their services in this cause before the full commission; and that upon submission by the carrier to the commission of a statement of the costs advanced by the carrier to finance claimant's evaluation program at the Institute for the Crippled and Disabled in New York City, together with supporting bills and receipts, the commission do reimburse the carrier for such

costs from its administrative fund established under section 440.50, Florida Statutes 1955.

JAMES CAMERON, Commissioner (concurring specially).

I agree with the foregoing order of the majority of the full commission insofar as it pertains to the payment of the lump sum amount, but I cannot agree with the opinion expressed therein with regard to the further liability in the event the boys' camp venture of the claimant should become profitable to him. Also I cannot agree with that part of the order stating that the deputy erred as a matter of law in expressing his opinion that there is a possibility that claimant may improve to the extent that he would not be permanently and totally disabled. It seems to me that the language the deputy used follows the true spirit and intent of the workmen's compensation law and in the instant case he has simply said that through the providing of the lump sum payment if the claimant is able to be restored to a productive capacity then there would be a possibility that no further liability would exist on the part of the employer.

It seems to me that the statements in the majority order that "Income from an investment, even though he participated in the management of that investment, would not constitute 'wages' earned in 'employment' within the meaning of the definition of 'disability' as contained in the Act," and implying that "employment" relates only to being hired by an employer for wages, would open the gates to a claim for permanent total disability benefits by an injured employee who has become self-employed as an independent contractor or otherwise, even though his income therefrom may be ten times the wages he earned on the job in which he was injured. The definition of "employment" in Webster's New Collegiate Dictionary includes the following—"That which engages or occupies time or attention; also, an occupation, profession, or trade." The definition of "wages" in this dictionary includes the following—"This economic or technical sense of the word *wages* is broader than the current sense, and includes *wages of management or superintendence which are earned by skill in directing the work of others.*" Certainly, this interpretation would be applicable in cases which we have decided in the past involving officers of corporations who have been successful in obtaining awards of workmen's compensation benefits. In the strict and less liberal interpretation of "wages" such persons would not be entitled to compensation since their remuneration would be salaries as opposed to wages, which would be clearly distinguishable if we looked at section 440.02(9) of the Act in the light of the language reflected in the majority order.

It is my opinion that the claimant, Mr. Feldkamp, should be deemed to be earning "wages" in "employment" within the meaning of section 440.02(9), defining "disability," in the event he should become successful in his boys' camp venture in North Carolina. Therefore, if such should occur and he should be gainfully employed in this occupation, I do not believe the carrier would have further liability for compensation on the basis of total disability.