988 So.2d 933 (2008)
DEPARTMENT OF HEALTH/ELLISVILLE STATE SCHOOL and Mississippi State Agencies Workers' Compensation Trust, Employer-Carrier, Appellants,
v.
Phyllis STINSON, Appellee.
No. 2007-WC-01139-COA.
Court of Appeals of Mississippi.
August 5, 2008.
*934 Diane V. Pradat, Tameka Wilder Buck, Jackson, Attorneys for Appellants.
*935 Percy W. Watson, Hattiesburg, Attorney for Appellee.
Before KING, C.J., GRIFFIS and CARLTON, JJ.
KING, C.J., for the Court.
¶ 1. The Department of Health and Ellisville State School (School) appeal from the Perry County Circuit Court's judgment affirming the Mississippi Workers' Compensation Commission's decision that Phyllis Stinson was permanently and totally disabled as a result of an injury she received during the course of her employment. Finding no error, we affirm.

FACTS
¶ 2. On April 1, 2002, Stinson sustained an injury during the course of her employment at the School as a direct-care-alternate supervisor while attempting to subdue a violent child. After the injury, Stinson saw her primary-care physician, Dr. John Beamon, who in turn referred her to Dr. Michael C. Molleston, a neurosurgeon.
¶ 3. Dr. Molleston ordered an MRI, which showed that Stinson had a ruptured disc. Subsequently, Dr. Molleston performed a lumbar laminectomy. While Stinson's condition improved shortly after the surgery, her condition began to deteriorate. Dr. Molleston diagnosed her with adjacent disc syndrome and recommended an additional surgery. However, she declined the surgery for fear it would further aggravate her injury. After Stinson declined the additional surgery, Dr. Molleston found that Stinson had reached maximum medical improvement. Upon this finding, Dr. Molleston restricted her from lifting, bending, stooping, or reaching overhead. Further, he stated that Stinson could not return to any gainful employment. Dr. Molleston then referred Stinson to Dr. Stephen Beam who assigned her an impairment rating of twenty-three percent to the body as a whole.
¶ 4. In addition to Dr. Molleston's treatment, Stinson was examined by Dr. Rahul Vohra. On March 12, 2004, Dr. Vohra recommended a functional capacity evaluation and stated that "I suspect she will come out at some light level of work." However, in a letter dated July 13, 2005, which was sent to the School in response to when Stinson would be able to return to full-time work activities, Dr. Vohra stated, "probably never."
¶ 5. After her injury precluded her from working at Ellisville State School, the school hired Bruce Brawner, a vocational expert, to assist Stinson in locating suitable employment. After reading over Dr. Vohra's evaluation of Stinson, Brawner concluded that Stinson could perform light-level jobs. He then recommended a total of thirteen places with suitable employment. At the hearing, Stinson provided a list of twenty-eight jobs she unsuccessfully sought, including three employers that Brawner suggested. Further, she sought employment through the Mississippi Employment Service, but she did not receive any referrals from that source.
¶ 6. Throughout this process, Stinson has served as the Greene County Election Commissioner. Normally this job entails purging the voter rolls, hiring and training the poll workers, packing the supply boxes for the polling places, holding the elections, working at the counting center, and taking the paper ballots from the poll boxes. Stinson testified that she can no longer perform the physical aspects of the job and has to depend on the other commissioners to help her. Now, she is only able to complete some paperwork and computer work. The Commission found that as an election commissioner, Stinson made a *936 weekly average of $119.77 from April 1, 2002, through September 15, 2004.
¶ 7. After a hearing, the administrative law judge found Stinson to be permanently and totally disabled. His findings were adopted by the Commission. The employer subsequently appealed, and the Commission's decision was affirmed by the trial court. It is from this finding that the School now appeals.

STANDARD OF REVIEW
¶ 8. In workers' compensation cases, the Commission is the ultimate fact-finder, and its decisions are accorded a deferential standard of review. Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss.1993). Therefore, we will only reverse the decision of the Commission "where issues of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious." Duke ex rel. Duke v. Parker Hannifin Corp., 925 So.2d 893, 896(¶ 11) (Miss.Ct.App.2005) (citing Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 448(¶ 8) (Miss.Ct.App. 1999)).

ANALYSIS
¶ 9. The parties agreed that Stinson suffered an injury during the scope of her employment. Therefore, our analysis will focus upon the Commission's finding that Stinson was permanently and totally disabled. The School makes several different allegations that the Commission's decision that Stinson was permanently and totally disabled should be reversed. Essentially, the School alleges that the Commission's decision was not supported by substantial evidence because: (1) no medical evidence supported a finding of permanent and total disability; (2) Stinson did not seek out re-employment with reasonable efforts; and (3) Stinson was actually employed as the Greene County Election Commissioner.

I. Whether the medical evidence supported a finding of permanent and total disability.
¶ 10. The School's first allegation of error is that the Commission did not have before it substantial medical evidence that supported its decision. Our law requires that "an injured worker must support her claim of disability with medical findings." Goodlow v. Marietta-American, 919 So.2d 149, 152(¶ 10) (Miss.Ct.App. 2005). The School acknowledges that Stinson did present the opinion of Dr. Molleston, her treating physician, who stated that Stinson was permanently and totally disabled. However, the School points out that conflicting evidence was presented from Dr. Vohra, who stated that Stinson might be able to complete a light level of work.
¶ 11. Dr. Molleston restricted Stinson to only lifting ten to twenty pounds. Further, she could not sit for more than fifteen to twenty minutes without having to lie down. Specifically, he stated that in a normal work day, Stinson would need to lie down twice for about an hour each time. The School attempts to devalue the opinion of Dr. Molleston by pointing out he did not know that Stinson was employed as an election commissioner. When confronted with this information, Dr. Molleston testified that his opinion had not changed. He stated, "I'm sure she can do some things for a short period of time, but that's because, you know, when she's not working as the election commissioner, then I guess she can go home and lay [sic] down for two or three days afterwards to get over it."
¶ 12. The School claims that Dr. Vohra's opinion that Stinson can still complete light-level work should be valued over Dr. Molleston's opinion. However, his statement came after he recommended *937 a functional capacity evaluation. He stated that he "suspected" that she would come out at light level. When he was asked by the School when she might be able to return to full-time work, he responded, "probably never." We take note that a treating physician's opinion is entitled to more weight than a physician who examines the individual solely for the purpose of testifying. Clements v. Welling Truck Serv., Inc., 739 So.2d 476, 478 n. 1 (Miss.Ct.App.1999). Dr. Molleston treated Stinson for a period of four years, whereas Dr. Vohra examined Stinson in order to prepare an opinion for the Commission.
¶ 13. After a review of all the medical evidence, it is clear that the Commission had substantial medical evidence to find that Stinson was permanently and totally disabled. Therefore, this allegation of error is without merit.

II. Whether Stinson exercised reasonable efforts in seeking re-employment.
¶ 14. The School claims that Stinson did not make reasonable efforts to find new employment. Mississippi law requires that for an individual to show that he is disabled, he must make reasonable efforts to find the same or similar employment. Barnes v. Jones Lumber Co., 637 So.2d 867, 869-70 (Miss.1994). However, when the employee reports back to her employer and is not rehired or reinstated, then a prima facie case is established. Jordan v. Hercules, Inc., 600 So.2d 179, 183 (Miss.1992). Once the employee has established a prima facie case, the burden shifts back to the employer to show that the employee's efforts were not reasonable or were mere shams. Barnes, 637 So.2d at 870.
¶ 15. After Stinson's injury, the School hired Brawner to assist Stinson in finding suitable employment. Following Dr. Vohra's opinion that she should be able to complete light-level work, he found thirteen possible places for suitable employment. Over the period of two years after Stinson had reached maximum medical improvement, she contacted twenty-eight possible employers, including three suggested by Brawner. In addition to the employers that she contacted, she sought assistance through the Mississippi Employment Service, but they were not able to give her any referrals for possible employment. The Commission found that her job search was reasonable, and this Court concludes the same. The School did not overcome its burden of proving that Stinson's efforts were mere shams. Her efforts did not have to be exhaustive, but rather merely reasonable; and in this case, her efforts were reasonable. Therefore, this allegation of error is without merit.

III. Whether the fact that Stinson was the Greene County Election Commissioner disqualified her from total permanent disability.
¶ 16. This entire case can be summed up with this statement by the administrative law judge: "this claim would appear to be a fairly routine case of permanent and total disability. The wrinkle in this situation, however, is Mrs. Stinson's employment as an election commissioner." The School alleges that since Stinson is employed as an election commissioner, she cannot be permanently and totally disabled. The Commission found that Stinson's "limited, part-time activities as an election commissioner do not represent regular work so as to bar her from receiving permanent total disability benefits." It further found that since the position is an elected position, the wages she received could have been counted as sympathy benefits.
¶ 17. "Total disability may be found, in spite of sporadic earnings, if the claimant's physical condition is such as to *938 disqualify him for regular employment in the labor market." Univ. of Miss. Med. Ctr. v. Smith, 909 So.2d 1209, 1222(¶ 45) (Miss.Ct.App.2005) (quoting Roling v. Hatten & Davis Lumber Co., 226 Miss. 732, 85 So.2d 486 (1956)). Further, the fact that Stinson has relied upon other commissioners for help with her appointed tasks cannot be counted on to continue. O'Neal v. Multi-Purpose Mfg. Co., 243 Miss. 775, 781, 140 So.2d 860, 863 (1962).
¶ 18. The Commission found that Stinson made an average weekly wage of $119.77 from April 1, 2002, through September 15, 2004, while working as an election commissioner. It further found that because of the injury, Stinson was not able to perform many of the duties of the position and required help from her colleagues. The general duties of an election commissioner include purging voter rolls, hiring and training poll workers, packing the supply boxes for the polling places, holding the elections, working at the counting center, and taking the paper ballots from the poll boxes. Stinson testified that she can no longer perform many of the physical duties of the position and can only complete some paper and computer work. She was expected to work only five days a month for seventy dollars a day.
¶ 19. This Court addressed a similar situation in Smith. In that case, Smith had severe headaches that would randomly occur and force him to lie down for a period of time. Smith, 909 So.2d at 1222(¶ 46). This Court found that while Smith was able to perform part-time carpentry work, it was on an irregular basis. Id. at 1223(¶ 49). We found that "Smith has shown himself to be limited by his injury from all but irregular work in which he can set his own pace and duration." Id. at (¶ 50). Stinson's case is extremely similar. She is required to lie down for a period of time after sitting for only fifteen to twenty minutes. Further, Dr. Molleston testified that only irregular work would fit her condition since she would have to rest such a great deal during the week. In addition, Stinson was extremely limited in the physical tasks she could accomplish, and she required the help and sympathy of her colleagues to perform her duties. As we stated before, this type of sympathy and assistance cannot be counted on to continue. O'Neal, 243 Miss. at 781, 140 So.2d at 863.
¶ 20. Clearly, Stinson has shown herself to be limited only to irregular work similar to the facts in Smith. Therefore, the Commission's statement that the pay Stinson received as a part-time elected official was not indicative of her wage-earning capacity was based on substantial evidence and was neither arbitrary nor capricious. Therefore, this allegation of error is without merit.

CONCLUSION
¶ 21. The Commission's finding that Stinson was permanently and totally disabled was supported by the medical evidence and employment history in the record. Therefore, the decision of the Commission is affirmed.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF PERRY COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.