IRVING, J.,
for the Court:
¶ 1. This is an appeal by Montana’s Sea Kettle Restaurant (Montana) and Service Industries Workers’ Compensation Trust (Service Industries) from an order of the Circuit Court of Harrison County affirming the decision of the Mississippi Workers’ Compensation Commission (Commission). The Commission upheld the administrative law judge’s decision awarding 1) temporary total disability benefits in the amount of $130.10 per week beginning May 4, 1992, and continuing until October 4, 1996; 2) permanent partial disability benefits in the amount of $26 per week beginning October 5, 1996, and continuing for a period of 450 weeks, with credit for any payments already made by the employer or carrier during that time; and 3) medical services and supplies as required by the nature of the claimant’s injury and the process of her recovery. Aggrieved, Montana and Sendee Industries appeal and raise one issue for review. The statement of issue which is recited verbatim from Montana and Service Industries’s brief is as follows
THE CIRCUIT JUDGE ERRED IN AFFIRMING THE DECISION OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION BECAUSE THE CLAIMANT DID NOT PRESENT SUFFICIENT MEDICAL EVIDENCE TO SUPPORT AN AWARD FOR PERMANENT PARTIAL OCCUPATIONAL DISABILITY OR LOSS OF WAGE EARNING CAPACITY.
Finding no reversible error, we affirm.
FACTS
¶ 2. On May 4, 1993, Jones was working at Montana’s when she slipped and struck her head on the floor. She was rendered unconscious for approximately ten minutes. After the accident, Jones suffered from dizziness, right ear pain, headaches, blurred vision, and problems with balance. Jones consulted Dr. Richard Peden, a general practitioner, who referred her to Dr. Rubin Wallace, an ear, nose and throat specialist.
¶3. On December 6, 1993, Jones filed her petition to controvert with the Mississippi Worker’s Compensation Commission concerning the work-related injuries. A hearing on the matter was held January 4, 1995. The medical records and the deposition testimonies of Dr. Wallace and Dr. Roberts were submitted as evidence. At the deposition, Dr. Wallace recommended that Jones not work in any hazardous oc *102 cupation or situation and restricted her from any heavy lifting as a result of her balance problems. Dr. Wallace also recommended that Jones work in a sedentary occupation for an employer who would understand her need to rest if she became dizzy. Dr. Wallace also stated that improvement of Jones’s condition was expected; however, he could not diagnose with certainty that she would get back to where she was before the accident. If she improved within the first year of the accident, she would have a 75% or better chance of recovery. Following the hearing, the administrative law judge rendered an interlocutory order in favor of Jones. The judge found that Jones sustained a compensable accidental injury to her right inner ear which arose out of and in the course and scope of her employment and that she was temporarily totally disabled. He also found that Jones had not reached maximum medical improvement. Accordingly, the parties were ordered to inform the Commission when she reached maximum medical improvement.
¶ 4. In July 1996, Jones worked as a waitress at the Grand Casino in Gulfport. After about two months, Jones left that job because she had difficulty with her memory and balance and because she was not properly trained. After several attempts to find a job, Jones finally obtained a job at the Holiday Inn Express in February of 1997. Jones’s duties required her to register guests, answer the telephone, and take reservations.
¶ 5. The parties stipulated that Jones reached maximum medical recovery on October 4,1996. A hearing was held on June 24, 1997, to determine whether Jones had sustained any permanent occupational disability or loss of wage-earning capacity as a result of her injury. At this hearing, Jones testified and presented four pages from Dr. Wallace’s medical records. Jones testified that her employment with the Holiday Inn was going well, but she tended to mix up numbers which detracted from her job performance. She also stated that she did not have this problem before the accident. She also testified about her present health condition and her inability to work as a waitress because of the health problems which resulted from the fall. Dr. Wallace did not testify. Montana and Service Industries offered testimony from Nadine McCain, Jones’s supervisor at Holiday Inn. McCain testified that Jones was performing well, although she often had to write extensive notes and mixed up numbers.
¶ 6. On October 2, 1997, the administrative law judge rendered a decision in favor of Jones based on the demeanor of the witnesses at the hearing, pleadings, pretrial statements, lay and medical evidence, including the medical records and deposition testimony of Dr. Wallace and Dr. Roberts submitted during the hearing in January 1995, plus four pages of Dr. Wallace’s medical records covering treatment since the January 1995 hearing.
DISCUSSION

Did the circuit court judge err in affirming the decision of the Mississippi Workers’ Compensation Commission?

¶ 7. We are bound by the findings and orders of the Workers’ Compensation Commission so long as they are supported by substantial evidence. Walker Mfg. Co. v. Butler, 740 So.2d 315, 320 (Miss.Ct.App.1998). We are bound even though the “evidence would convince the court otherwise if it were instead the ultimate fact finder.” Id. We will overturn a Commission’s decision only when there is an error of law or an unsupportable finding of fact. Id.
¶ 8. Montana and Service Industries argue that the decision of the circuit court affirming the order of the Commission should be overruled because it is not supported by substantial evidence. It asserts that no recent medical testimony was presented at the second hearing to warrant the need for an assignment of any limitations to Jones’s activities or ability to re *103 turn to work and that the medical records presented at the second hearing were illegible; therefore, no credible evidence was presented to support the Commission’s decision.
¶ 9. When we initially reviewed the records, they appeared illegible to us. However, we noted that because they appeared to be illegible to us did not necessarily mean that neither the administrative law judge nor the Commission understood them. In order to discharge our oversight responsibility, we ordered an expansion of the record on the evidence presented at the second hearing which related to Dr. Wallace’s treatment of Jones following the first hearing until 'Melissa reached maximum medical recovery. We directed that the directive could be accomplished by obtaining a legible transcription of the medical records presented or an affidavit from Dr. Wallace explaining and detailing his notes or setting forth with clarity the treatment rendered Jones between the first hearing and the date she reached maximum medical recovery. We have received the expansion as ordered and have reviewed the records in detail.
¶ 10. After reviewing the transcribed medical notes of Dr. Wallace, we find that there was substantial credible evidence to support the decision of the administrative law judge and the Commission. The medical notes reflect that Dr. Wallace began treating Jones on September 20, 1993. On Jones’s first visit she suffered visual blurring, dizziness, distance judgment problems, and headaches.. .On September 21, 1993, Jones underwent testing. Her brain mapping test returned normal. On her next visit on October 10, 1993, Dr. Wallace discovered and noted that her hearing was “down” fifteen percent. Dr. Wallace also prescribed a diet, exercise, Antiox routine, and requested that she return in three to four weeks. On October 11, 1993, Dr. Wallace had a phone conservation with Jones, informing her of the drop in hearing. Dr.- Wallace’s notes indicate that for her December 3, 1993 scheduled visit, Jones’s husband phoned and stated that she could not return to the doctor’s office because her workers’ compensation had been discontinued.
¶ 11. Jones returned to Dr. Wallace’s office on March 10, 1994. During this visit, Dr. Wallace observed that Jones experienced occasional dizziness and sinus problems. Dr. Wallace conducted another brain mapping and the results were normal. Dr. Wallace also prescribed a diet, exercises,-and an Antiox routine. On the April 14,- 1994 visit, Jones continued to experience headaches and hearing problems.' On May 19, 1994, Jones phoned Dr. Wallace and- requested a visit because of ear pain. On Jones’s June 3, 1994 visit, she continued to experience dizziness. The ear pain was gone.
¶ 12. In 1995, Jones made .five visits to Dr. Wallace’s office. On February 2, 1995, Dr. Wallace wrote down that Jones was doing better. However, the tandem gait testing returned abnormal results. On the May 30, 1995 visit, Jones experienced pain and buzzing in her right ear and headaches. However, Dr. Wallace noted that her balance problems were improving. On, September 8, 1995, Jones suffered occasional dizziness, and nausea. On the October 27, 1995 visit, Dr. Wallace notes indicated that Jones was “unstable about 60%,” and suffered from occasional nausea. Jones’s vision was poor, and she had balance problems.
• ¶ 13. In 1996, Jones visited Dr. Wallace three times. On February 16, 1996, Dr. Wallace wrote that Jones was doing very well, although she experienced eye problems and her right ear was sore. On Jones’s June 27, 1996 visit, Dr. Wallace noted that Jones was not doing very well due to the stress of her divorce. On October 4, 1996, Dr. Wallace noted that Jones was better, but had upper respiratory problems. He also .noted that Jones worked for two months.
¶ 14. We are of the opinion that the medical evidence supports a finding of a *104 permanent partial injury to Jones’s inner ear. In Hall of Mississippi, Inc. v. Green, 467 So.2d 935 (Miss.1985), the Mississippi Supreme Court answered the appellant’s question of whether medical testimony was the only means of proving a disability. In response 1 to that question the court responded, “Simply put, we hold that disability need not be proved by medical testimony as long as there is medical testimony which will support a finding of disability.” Id. at 937. In the case sub judice, supportive medical testimony consists of the medical testimony presented at the initial hearing, the medical records and Jones’s testimony in which she testified to the continuance of pain. While it is true that there was no medical testimony affixing a percentage to Jones’s , disability, “the commission is not confined to medical testimony in determining the percentage of loss to be assigned to an injury.” McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 166 (Miss.1991).
 ¶ 15. Montana and Service Industries also argue that Jones did not meet her burden in proving loss of wage earning capacity. The Commission may consider many factors in determining loss of wage earning capacity. McGowan, 586 So.2d at 167. It may consider education and training which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstance. Id. The evidence shows that Jones can no longer work as a waitress because of dizziness, balance and memory problems. While working as a waitress, she earned approximately $9.00 per hour. Further, the evidence shows that Jones returned to work and found a job that will accommodate her medical problems; however, she will earn wages substantially less than she would as a waitress. We conclude there is substantial evidence to support the Commission’s finding of a loss of wage-earning capacity.
The previous opinion in this cause released by the Court on August 3, 1999, is withdrawn, and this opinion is substituted in its place.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY AFFIRMING THE DECISION OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.