930 So.2d 481 (2006)
LEVI STRAUSS & CO. and Old Republic Insurance Company, Appellants
v.
Staniece STUDAWAY, Appellee.
No. 2005-WC-01212-COA.
Court of Appeals of Mississippi.
May 30, 2006.
*482 P. Sharkey Burke, Marsha G. Lay, Ridgeland, attorneys for appellants.
Michael M. Williams, Jackson, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. On January 8, 2002, Staniece Studaway was injured while handling cartons for her employer, Levi Strauss & Company (Levi). The Mississippi Workers' Compensation Commission (Commission) determined that Studaway sustained a 50 percent industrial loss of use in her right arm, and awarded her permanent partial disability benefits. The Circuit Court of Madison County affirmed. Aggrieved, Levi and Old Republic Insurance Company (hereinafter collectively referred to as "Employer") appeal, asserting the following issues:
I. Whether the Commission award is contrary to the law.
II. Whether the award of the Commission was supported by substantial evidence.
III. Whether the award of the Commission was arbitrary and capricious.
IV. Whether the Commission erred in its application of the concept of loss of *483 wage-earning capacity in a scheduled member case.
V. Whether Studaway was entitled to benefits beyond the medical impairment rating cited in the record.
a. Whether the Commission erroneously increased Studaway's loss of industrial use based on a showing that there were other jobs, unrelated to Studaway's employment at the time of injury, for which Studaway might be qualified.
b. Whether the Commission failed to properly consider that Studaway resumed functioning at the same or a similar job, for the same employer, while earning more money.
¶ 2. After reviewing the record and briefs in this case, we affirm the decision of the circuit court.

FACTS
¶ 3. Studaway was fifty-one years of age at the time of the Commission's decision. She graduated from high school in 1971 and attended college courses for operating room technicians, but never worked in that field. Prior to her employment with Levi, Studaway worked at the Hinds County Comprehensive Health Center as an assistant to a social worker, but was never trained to be a social worker. Studaway also worked for the Valley North YMCA as a teacher's assistant in the after-school program. Her duties included watching children from noon until 8:00 p.m., helping them with their homework, feeding them, and supervising their play. The after-school program was federally funded, and the grant ended. For a period of time, Studaway also worked for Syndyne, an automobile supplier that made harnesses for Ford vehicles, however, that employment ended.
¶ 4. Studaway began working for Levi on June 1, 1981. During the course of her employment with Levi, Studaway held numerous positions, including pick packer, receiving clerk, and accuracy auditor. As a pick packer, Studaway's duties included filling various orders for clothing items manufactured by Levi; she was required to be able to frequently lift forty pounds, and occasionally up to sixty pounds. Studaway held this position for approximately six years. Studaway's next position, receiving clerk, required that she be able to lift up to sixty pounds. She held this job for approximately three years. Studaway then became an accuracy auditor for Levi, where she lifted cartons weighing from fifty to sixty pounds; she held this position for two or three years. Studaway returned to the pick packer position in 1988, and remained in that position until 1995. She then returned to her position as receiving clerk from 1995 until 2001. For a brief period, Studaway worked as a seconds/irregulars processor; however, this position was eliminated shortly thereafter.
¶ 5. Studaway then moved to the shipping area work station (SAWS) department. Her position in the SAWS department required her to constantly lift and stack cartons weighing up to seventy pounds. She earned $9.89 per hour. On January 8, 2002, Studaway sustained an admittedly compensable injury to her right shoulder throwing a carton across the line.
¶ 6. Studaway's injury required surgery and therapy. Her primary care physician, Dr. Barry Munn, performed the shoulder surgery. When Dr. Munn was called into active military service, Dr. Van Temple took over as Studaway's primary physician. Studaway was released to return to work on October 8, 2002, with the understanding that she was restricted to light duty, with no lifting more than ten pounds frequently and no pushing or pulling more than twenty pounds for a work week of forty hours.
*484 ¶ 7. When Studaway returned to work for Levi, she was placed in a different position as a re-inducter in the universal work center (UWC) of the SAWS department. There was only one other worker with Studaway in the UWC. Although Studaway earned $10.81 per hour in her new position, this was due to a union negotiated, across-the-board pay increase. Her new position did not involve lifting, but it did require overtime. When Studaway was scheduled to work overtime, but did not report to work for the overtime, she was sent to her supervisor's office to be disciplined. Fortunately, her supervisor received confirmation from Dr. Temple that Studaway was restricted to a forty-hour work week.
¶ 8. Studaway testified that, before her injury, she earned grade-three level pay, including overtime pay; since her injury, however, she could not earn overtime pay, and was no longer able to bid for other, higher-paying positions with Levi. Studaway further testified that she no longer lifts items as she could before her injury, and that she is unable to perform household duties or similar physical activities. Moreover, Studaway testified that overuse of her right arm results in pain, and that she continues to take prescription medication and use an electrical stimulator for her injury.
¶ 9. The administrative judge determined that Studaway sustained a 50 percent industrial loss of use in her right arm, and awarded her permanent partial disability benefits of $271.90 beginning October 10, 2002, and continuing for a period of 100 weeks. The Commission affirmed the order of the administrative judge on November 29, 2004, and the Circuit Court of Madison County entered an order affirming the Commission on May 27, 2005.

STANDARD OF REVIEW
¶ 10. This Court's scope of review is limited to a determination of whether the decision of the Commission is supported by substantial evidence. Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 447(¶ 7) (Miss.Ct.App.1999). The Commission sits as the ultimate finder of fact; its findings are subject to normal, deferential standards upon review. Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss.1993). We will only reverse the Commission's rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious. Westmoreland, 752 So.2d at 448(¶ 8); Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1225 (Miss.1997).

ISSUES AND ANALYSIS
I. Whether the Commission award is contrary to the law.
II. Whether the award of the Commission was supported by substantial evidence.
III. Whether the award of the Commission was arbitrary and capricious.
IV. Whether the Commission erred in its application of the concept of loss of wage-earning capacity in a scheduled member case.
¶ 11. For the sake of clarity, we will address the Employer's first four assignments of error simultaneously. The Employer asserts that the Commission erred in assessing Studaway's occupational impairment at 50 percent to the upper right extremity. Citing Meridian Professional Baseball Club v. Jensen, 828 So.2d 740, 747(¶ 21) (Miss.2002), the Employer contends that the Commission failed to adhere to the principle that, in order to receive compensation for injury to a scheduled member in excess of the medical impairment *485 rating, the claimant must show that the injury rendered her unable to continue in the position held at the time of the injury, and unable to earn the same wages received at the time of the injury. Because Studaway's wages increased post-injury, and she did not seek employment outside of Levi, the Employer insists that the Commission's determination that she suffered a loss of wage-earning capacity was arbitrary and capricious. We disagree.
¶ 12. In Meridian the court held that:
[W]here a permanent partial disability renders a worker unable to continue in the position held at the time of the injury, we hold that such inability creates a rebuttable presumption of total occupational loss of the member, subject to other proof of the claimant's ability to earn the same wages which the claimant was receiving at the time of injury.
Id. at 748(¶ 21). The claimant may establish such inability by showing that she has made a reasonable, but unsuccessful effort to find work in her usual employment, or by presenting evidence of her inability to perform the substantial acts of her usual employment. Id. The presumption of total occupational loss can be rebutted by showing that the claimant is able to earn the same wages after the injury that she did before, or by other relevant evidence of wage-earning capacity, such as the claimant's age, education and training, or the continuance of pain. Id.
¶ 13. The claimant in Meridian sought benefits for total occupational loss of his left arm. Id. at 743(¶ 3). It was determined that the claimant's arm sustained a 7 percent functional impairment after maximum recovery. Id. The administrative judge determined that, although Jensen could no longer play professional baseball, he could earn more working part-time while going to college. Id. at 743(¶ 4). Nonetheless, the administrative judge awarded benefits for a 25 percent occupational loss of use to the member. Id. The Commission affirmed the decision, but the circuit court reversed, finding that Jensen sustained a total occupational loss. This Court reversed the decision of the circuit court and reinstated the order of the Commission, finding that the evidence of wage-earning capacity as a whole supported the Commission's finding of less than total loss of use. Id. at 743(¶ 6). The supreme court affirmed, holding that the Commission properly looked to the entire factual context of wage-earning capacity, including age, education, and work history to determine whether a total loss of the member had occurred. Id. at 750(¶ 27).
¶ 14. This case is readily distinguishable from Meridian, in that Studaway does not seek benefits for total occupational loss, but for permanent partial disability. The Commission found that Studaway received a 17 percent permanent medical impairment rating. In determining Studaway's occupational impairment, the Commission observed that Studaway was restricted to a light level of work with lifting and carrying no greater than twenty pounds, occasional pushing and pulling no greater than twenty pounds, and using both hands to lift more than ten pounds. Moreover, the Commission pointed out the conclusion of Studaway's treating physician, Dr. Temple, that she could no longer work overtime.
¶ 15. The Commission also considered the testimony of Studaway that, while working in the SAWS department pre-injury, she lifted and stacked cartons weighing up to seventy pounds and received overtime pay. Studaway also testified that she suffers pain if she overuses her right arm, and that she continues to take prescription medication and use an electrical stimulator on her injured shoulder. *486 Taking this evidence into account, the Commission determined that Studaway was unable to perform the substantial acts of the following positions she held with Levi: (1) pick packer, which required lifting up to forty pounds frequently, up to a maximum of sixty pounds; (2) receiving clerk, which required lifting up to sixty pounds; (3) seconds processor, which required occasionally lifting up to forty pounds, with a maximum of forty-three pounds; and (4) accuracy auditor, which required lifting fifty to sixty pounds. After her injury, Studaway continued to work for Levi in the SAWS department, but not in her pre-injury position because she could not lift the cartons or throw them over the line. Although Studaway earned more post-injury, the Commission determined that this was due to a union negotiated, across-the-board pay increase, and that Studaway could average substantially less pay than her current earnings in non-Levi positions.
¶ 16. The Commission considered other evidence of Studaway's wage-earning capacity, such as the fact that she was fifty-one years of age, and had a high school education. Although Studaway attended community college courses for operating room technicians, the Commission noted that she never worked in that field. Furthermore, the Commission emphasized that the jobs Studaway held before 1981 (when she began working for Levi) no longer existed, such as her position as a teacher's assistant with the YMCA after-school program, and her position with the automobile supplier, Syndyne.
¶ 17. For Studaway to receive benefits, it is not necessary for her to prove that she actually looked for employment outside of Levi. The supreme court reiterated this view in Meridian, quoting the following language from the concurrence to this Court's opinion in that case:
[W]hen a claimant seeks benefits based on an enhanced occupational effect of an injury to a schedule member, a variety of evidence is relevant to whether in fact the claimant is unable to perform the substantial acts of the employment ... a worker making this claim must convince the Commission that employment comparable to his occupation prior to the time of injury was no longer attainable.
Id. at 748(¶ 23) (quoting Meridian Prof'l Baseball Club v. Jensen, No.1999-WC-02098-COA, at (¶ 37) (Miss.Ct.App. Oct. 10, 2000) (Southwick, P.J., concurring) (emphasis added)). Consequently, we find that the Commission properly considered a variety of evidence in determining that Studaway suffered a loss of wage-earning capacity and a fifty-percent industrial loss of use to her right upper extremity. We also find that the Commission's decision to award Studaway benefits for permanent partial disability was supported by substantial evidence. Moreover, it is the long-standing rule of this Court that doubtful cases must be resolved in favor of compensation, so as to fulfill the beneficent purposes of the statute. E.g., Meridian, 828 So.2d at 744-45(¶ 10); Marshall Durbin Cos. v. Warren, 633 So.2d 1006, 1010 (Miss.1994). Therefore, the first four issues asserted by the Employer are without merit.

V. Whether Studaway was entitled to benefits beyond the medical impairment rating cited in the record.
a. Whether the Commission erroneously increased Studaway's loss of industrial use based on a showing that there were other jobs, unrelated to Studaway's employment at the time of injury, for which Studaway might be qualified.
b. Whether the Commission failed to properly consider that Studaway resumed functioning at the same or a similar job, for the *487 same employer, while earning more money.
¶ 18. The Employer argues that if the presumption of total occupational loss from Meridian is rebutted, then the claimant is not entitled to benefits for occupational loss of use of a scheduled member beyond the medical impairment rating, or functional loss. This is not a correct statement of the law established in Meridian.
¶ 19. As previously stated, the claimant in Meridian was denied benefits for total occupational loss because the court determined that he suffered no loss of wage-earning capacity. 828 So.2d at 749(¶ 25). The court determined that there was no loss of wage-earning capacity because the claimant could earn more working part-time while going to college than he earned playing baseball before his injury. Id. at 743(¶ 4). Despite the claimant's ability to earn more wages, the supreme court affirmed the decision to award benefits for an occupational loss of use of 25 percent, which went beyond the claimant's medical impairment rating of 7 percent. Id. at 750(¶ 25). Thus, as Meridian makes clear, rebutting the presumption of total occupational loss does not necessarily preclude an award of benefits for occupational loss in excess of functional loss. Therefore, this issue is without merit.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, AND ROBERTS, JJ., CONCUR.