FAIR, J.,
for the Court:
MODIFIED OPINION ON REHEARING
¶ 1. The motion for rehearing is denied. We withdraw our original opinion and substitute this opinion in its place.
¶ 2. Sanderson Farms Inc. appeals from the Mississippi Workers’ Compensation Commission’s order affirming the administrative judge’s (AJ) decision to award employee Tanya Jessie temporary total disability benefits and permanent partial disability benefits. Finding no error, we affirm.
FACTS
¶ 3. Jessie was forty-six years old when the Commission issued its order. She had received her high-school diploma. Jessie has performed hotel housekeeping in the past, but her work experience is primarily in the poultry processing industry. ⅛
¶ 4. Jessie began working at Sanderson Farms in 2003. Her job duties included poultry evisceration, which involved repetitive grasping and use of scissors and knives. The poultry carcasses weighed as much as eight pounds each. In 2010, Jessie developed bilateral carpal tunnel syndrome from repetitive motion in both hands, wrists, and arms. Due to her permanent work restrictions, Jessie was no longer able to perform her original job duties. So she worked at the liver table, separating the poultry hearts, lungs, and livers, and placing them into specified containers.
¶ 5. On June 20, 2011, Jessie filed a petition to controvert for her work injuries: Sanderson Farms admitted in its answer that Jessie had sustained the injuries listed in her petition but denied that she was entitled to temporary or permanent disability benefits. Sanderson Farms also denied that Jessie' had sustained a loss of wage-earning capacity.
¶ 6. A hearing Was held before the AJ on June 13, 2013. -The AJ reviewed the medical records and affidavit of Jessie’s treating physician, Dr. Sheila Lindley. Dr. Lindley initially saw Jessie on August 20, 2010. She diagnosed Jessie with left cubital tunnel syndrome and persistent carpal tunnel syndrome with' the left greater than the right. On November 15, 2010, Jessie underwent left carpal’tunnel open decompression. On January 10, 2011, she underwent right' carpal- tunnel open decompression. Jessie was released for light duty work activities on April 4, 2011; she was instructed to refrain- from scissor or knife use as well as from repetitive continual wrist flexion or digital flexion extension. Dr. Lindley -found that Jessie had reached maximum medical improvement on April 15, 2011. She. assigned Jessie a six percept impairment rating .to each up,per extremity. Work restrictions at that time were no continual .repetitive digital flexion extepsion or sustained gripping-activities. Dr. Lindley further instructed Jessie to avoid lifting, pushing, or pulling greater than twenty pounds with, either the left or right upper extremity.
¶ 7. On July 10, 2012, Dr. Lindley issued a report stating that Jessie returned to her clinic on May 30, 2012, with a flare *400 of her carpal tunnel symptomatology. According to Dr. Lindley’s report, Jessie had been doing well until she started hanging chickens that were greater than eight pounds. Jessie showed marked improvement after her placement at the liver table. Dr. Lindley recommended that Jessie lift no more, than five pounds with the left or right upper extremity, and no more than twenty pounds with both hands. Jessie’s other work restrictions remained the same.
¶ 8. The AJ additionally reviewed the medical records ahd affidavit of Dr. Rahul Vohra. Jessie first saw Dr. Vohra on September 14, 2012, for an employer medical evaluation. Jessie had complaints of bilateral hand pain and numbness. Dr. Vohra reviewed , Dr. >, Lindley’s medical records. Dr. Vohra opined that Jessie had mild wrist flexor tendinitis, based' on tenderness along Jessie’s left wrist flexors. He further stated that Jessie’s recurrent numbness complaints could be secondary to recurrent median nerve entrapment at the wrist. Dr., Vohra recommended that Jessie undergo a repeat nerve conduction to help detail Jessie's permanent restrictions and impairment. He performed the nerve conduction, on September 29, 2012, and found no evidence of residual medial neuropathy in either-upper extremity. As a result, Dr. Vohra found no basis for residual impairment or restrictions.
¶ 9. On December 18, 2012, Dr. Lindley issued a report in response to Dr. Vohra’s evaluation. ' She stated that she' and Dr. Vohra agreed' that Jessie suffered from wrist flexor tehdinitis and potential recurrent median nerve entrapment. She further stated that “she was pleased to see that Jessie’s nerve conduction studies had returned to normal. However, Dr. 'Lind-ley ultimately thought that Jessie’s work restrictions, should remain intact. -She based her opinion on Jessie’s clinical flare in her carpal tunnel symptomatology, which she suffered after slightly changing her work activities.
¶ 10. The AJ also heard testimony from Jessie, Tom Stewart, a certified rehabilitation counselor, and April Suzanne Taylor, the Sanderson Farms employee relations manager. Jessie testified that her placement at the liver table‘was the only job she could perform at Sanderson Farms. She also testified that she is a union member and that any raises or increases in wages she receives are determined by the union contract. Stewart testified that he interviewed Jessie on April 18, 2012, and issued a vocational rehabilitation evaluation report. In his report, Stewart provided a history of injury and medical treatment, where he detailed Dr. Lindley’s treatment of Jessie. Stewart specifically referenced Dr. Lindley’s report from July 10, 2012, which stated that Jessie should be limited to lifting nó moré than five pounds with her left and right upper extremities. Stewart ultimately concluded that Jessie’s work restrictions precluded her from ninety-nine percent of all jobs in the competitive labor market: Stewart further stated that, should Jessie “lose her current ‘sheltered employment’ with Sand-erson Farms, it may be almost impossible for her to find alternative employment.” Taylor testified to the contrary, stating that Jessie’s job at the liver table was not sheltered employment,
¶ 11. On July 1, 2013, the AJ issued an order finding that Jessie suffered a fifty percent loss of industrial use to each upper extremity, as a result of her admitted work-related injuries. The Commission heard the matter on January 13, 2014, and affirmed (two,to one) the AJ’s order.
¶ 12. Sanderson Farms- appeals, asserting the- following: (1) The Commission erred in ordering permanent partial disability for one hundred weeks, with a fifty *401 percent loss of use for industrial purposes relative to the right extremity, followed by an additional one hundred weeks, representative of a fifty percent loss of use for industrial purposes for the left upper extremity; (2) The Commission erred in giving greater weight to Dr. Lindley’s testimony than Dr. Vohra’s testimony; and (3) The Commission erred in considering Stewart’s testimony.
STANDARD OF REVIEW
¶ 13. “The findings and order of the Workers’ Compensation Commission are binding on the Court so long as they are ‘supported.by substantial evidence,’” Mitchell Buick v. Cash, 592 So.2d 978, 980 (Miss.1991) (quoting Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). “No court can reweigh the evidenced] [T]he Commission is the fact-finder and the judge of the credibility of witnesses,” Short v. Wilson Meat House LLC, 36 So.3d 1247, 1251 (¶ 23) (Miss.2010) (citing Barber Seafood Inc. v. Smith, 911 So.2d 454, 461 (¶ 27) (Miss.2005)).
DISCUSSION
1. Jessie’s Compensation
¶ 14. This is a scheduled-member case. If a worker suffers the medical or functional loss of a scheduled member, the statute provides the. worker two-thirds of her average weekly wage for a number of weeks arbitrarily set by the Legislature for that particular body part. Miss.Gode Ann. § 71-3-17(c) (Rev.2011). Additionally, there may be times where the employee is entitled to compensation for industrial (occupational) loss — when the industrial loss is greater -than the functional loss. City of Laurel v. Guy, 58 So.3d 1223, 1226 (¶ 14) (Miss.Ct.App.2011). In other words, “it will sometimes be the ease that evidence of a greater occupational disability than would be indicated by the medical evidence alone will justify a higher disability rating, in which case relief is awarded that goes beyond the arbitrary provisions of the schedule.”. Meridian Prof'l Baseball Club v. Jensen, 828 So.2d 740, 745 (¶ 13) (Miss.2003).
¶ 15. An employee’s inability “to continue in the position held at the time of injury ,.. creates a rebuttable presumption of total occupational loss of the member, subject to other proof of the claimant’s ability to earn the same wages which the claimant was receiving at the time of injury.” Id. at 747 (¶ 21). “[A] Worker who is earning [higher] post-injury wages may nonetheless be entitled to an industrial loss greater than his medical loss, [although] he cannot be compensated for a total loss.” Guy, 58 So.3d at 1227 (¶ 8).
¶ 16. Sanderson Farms claims that the Commission erred in awarding Jessie compensation for a fifty percent functional loss for industrial purposes of both upper extremities. Sanderson Farms supports its -argument, with the fact that Jessie’s wages are higher post-injury and therefore preclude -such .an award. Jessie testified that she cannot work in the position held at the time of her injury. For the past two years, she has remained, at the liver table with work restrictions. Jessie ’ currently earns a higher hourly wage than before her injury, only because of a union-negotiated increase.
¶ 17. In Levi Strauss & Co. v. Studaway, 930 So.2d 481, 486 (¶ 19) (Miss.Ct.App.2006), this Court affirmed compensation of a fifty percent -industrial loss notwithstanding Studaway’s post-injury pay increase. -Studaway injured her shoulder “on the job” and could no longer lift or throw cartons in the shipping area working station. Id. at 483 (¶ 5). So Levi placed Studaway in a different .position post-injury with several work restrictions. Id. at *402 (¶ 6). As a union member, Studaway earned more money per hour in her-new position. Id. at 484 (¶ 7), The Commission considered the union-negotiated increase, along with other factors, such as her age, education, and work history, and found Studaway was entitled to benefits beyond the medical impairment rating cited in the record. Id. at 485 (¶ 16).
¶ 18. In the present case, the Commission likewise considered other factors in addition to Jessie’s union-negotiated pay increase. See Jensen 828 So.2d at 747 (¶ 20) (finding that, for a scheduled.member claim, wage-earning capacity, education, age, and other related circumstances should be considered to determine award of industrial loss). After considering the evidence as a whole, the Commission determined Jessie had demonstrated a loss of industrial use in excess of her functional loss and compensated Jessie for a fifty percent industrial loss. While Jessie’s higher earnings may have precluded her from benefits for a total loss, “rebutting the presumption of total occupational loss does not necessarily preclude an award of benefits for occupational loss in excess of functional loss.” Levi, 930 So.2d at 486 (¶ 19).
¶ 19. Sanderson Farms claims the present case in analogous to Gaston v. Tyson Foods Inc., 122 So.3d 797 (Miss.Ct.App.2013). In Gaston, the employee injured her wrist, elbow, left shoulder, and heel. Id. at 799 (¶ 3). As a result, she was moved from the washout department to the gizzard table to accommodate her heel injury. Id. at (¶ 4). She later injured her right shoulder and was moved from the gizzard table to the liver table. Id. at (¶¶ 4-5). She remained at the liver table, where as a union employee, she received higher weekly wages. Id. at (¶ 5). Both the AJ and the Commission denied the employee’s claim for industrial loss and found that she was only entitled to her medical loss as a scheduled member. Id. at 800 (¶ 12). The Commission essentially found the employee failed to offer substantial evidence to rebut the “presumption of total occupation loss of the member.” Id.; Jensen, 828 So.2d at 747 (¶21). This Court found substantial evidence to support the Commission’s decision. Id.
¶ 20. “The [Commission] sits as the ‘ultimate finder of facts’ in deciding compensation cases, and therefore, ‘its findings are subject to normal, deferential standards upon review.’ ” Pilate v. Int’l Plastics Corp., 727 So.2d 771, 774 (¶ 12) (Miss.Ct.App.1999) (quotations omitted). “We will overturn [the] Commission’s decision only when there is an error of law or an unsupportable finding of fact.” Montana’s Sea Kettle Rest. v. Jones, 766 So.2d 100, 102 (¶ 7) (Miss.Ct.App.2000) (quotation omitted). Here, as discussed supra (¶ 17), the Commission considered all the necessary factors before it found Jessie was entitled to an industrial loss. We find no error of law or unsupported fact. See Jones, 766 So.2d at 102 (¶ 7).
2. Medical Testimony
¶ 21. Sanderson. Farms also argues that the Commission should have given greater weight to Dr." Vohra’s testimony. Dr. Lindley and Dr, Vohra had conflicting opinions on Jessie’s impairment and work restrictions. Dr. Lindley, Jessie’s treating physician, testified that Jessie developed carpal tunnel syndrome while working at Sanderson Farms. She imposed a six percent impairment rating, along with limited work restrictions. Dr. Lindley further recommended Jessie’s restrictions remain in place to avoid any potential flaring of her symptoms. On the other hand, Dr. Vohra opined that Jessie was no‘longer impaired and therefore did not need any work restrictions.
*403 ¶ 22. Our courts have consistently held that the Commission is the ultimate fact-finder. Barber, 911 So.2d at 461 (¶ 27) (citing Smith v. Jackson Constr. Co., 607 So.2d 1119, 1123-24 (Miss.1992)). “Where medical expert, testimony is concerned, [our supreme court] has held that whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant.” Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 336 (¶ 3) (Miss.2003) (quoting Kersh v. Greenville Sheet Metal Works, 192 So.2d 266, 268 (Miss.1966)). The Commission was entitled to find the testimony of Dr. Lindley more compelling than Dr. Vohra’s.
3. Stewart’s Testimony
¶ 23. Sanderson Farms also argues that the Commission erred in considering Stewart’s testimony and evaluation report. Specifically, Sanderson Farms claims that Stewart’s opinion lacked credibility because his report did not consider Dr. Vohra’s evaluation. Sanderson Farms made the same argument before the AJ in its objection to Stewart’s testimony. The AJ overruled the objection.
¶ 24. Stewart testified that he had reviewed Dr. Vohra’s evaluation after he issued his report. However, he agreed with Dr. Lindley’s recommendations. ' “The Commission is ... the ultimate judge of the credibility of witnesses.” Barber, 911 So.2d at 461 (¶ 27) (citing Miller Transporters Inc. v. Guthrie, 554 So.2d 917, 918 (Miss.1989)). We find no error in the Commission’s ruling.
CONCLUSION
¶ 25. After reviewing the record, and applying the applicable standard of review, we cannot say that the Commission’s decision was not supported by substantial evidence. Therefore, we affirm the decision of the Commission.-
¶ 26. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., NOT PARTICIPATING.