# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-WC-00526-COA

**HOWARD INDUSTRIES INC.**    APPELLANT/
CROSS-APPELLEE

**v.**

**SICILY WHEAT**    APPELLEE/
CROSS-APPELLANT

DATE OF JUDGMENT: 03/05/2019
TRIBUNAL  FROM WHICH APPEALED: MISSISSIPPI WORKERS' COMPENSATION COMMISSION
ATTORNEY FOR APPELLANT: PARKER FORD LEGGETT
ATTORNEY FOR APPELLEE: FLOYD E. DOOLITTLE
NATURE OF THE CASE: CIVIL - WORKERS' COMPENSATION
DISPOSITION: ON DIRECT APPEAL: AFFIRMED; ON CROSS-APPEAL: AFFIRMED - 05/05/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., WESTBROOKS AND C. WILSON, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.    Sicily Wheat filed a petition to controvert after sustaining a back injury during the course and scope of her employment at Howard Industries Inc. (Howard Industries). Following a hearing on the matter, the administrative judge (AJ) ruled that Wheat had shown no loss of wage-earning capacity.  After conducting a review, the Mississippi Workers' Compensation Commission entered an order reversing the AJ's ruling.  The Commission found that Wheat had established a loss of wage-earning capacity and awarded Wheat permanent partial disability benefits.  It is from this order that Howard Industries now appeals.  Wheat cross-appeals the Commission's order, alleging the Commission erred by

failing to award her permanent total disability benefits. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On June 29, 2017, Wheat filed a petition to controvert with the Commission. Wheat alleged that on July 18, 2016, she sustained a back injury while lifting materials (a basket of coils) in her capacity as a coil helper at Howard Industries.[1] Howard Industries did not dispute the injury in its answer.

¶3.     On May 22, 2018, the AJ held a hearing on the matter to determine the issues of (1) the existence, nature, and extent of disability attributable to the injury and (2) Wheat's entitlement to any future medical benefits.

¶4.     The AJ considered medical testimony provided by three of Wheat's treating physicians.

### I.     *Dr. Michael Patterson*

¶5.     Dr. Michael Patterson, an orthopedic surgeon, treated Wheat from August 17, 2016, until she reached Maximum Medical Improvement (MMI) on May 1, 2017. To assist in the evaluation of Wheat's ongoing complaints of back pain, Dr. Patterson ordered a Functional Capacity Evaluation (FCE), which was performed by Southern Bone and Joint Rehabilitation Inc. on April 26, 2017. The FCE report indicated that Wheat exhibited "self-limiting behavior" and "submaximal effort," and determined that Wheat was able to perform light physical work with occasional lifting up to twenty pounds below waist-level height. The FCE report concluded that Wheat could work full time and perform light-level work. A

---

[1] As a coil helper, Wheat would retrieve paper order material and leads, load them into a cart, and supply them to the coil winders each shift.

seven percent whole-person impairment was assigned. Dr. Patterson agreed with the FCE and released Wheat to return to work at a light-level work duty with a seven percent whole-person impairment rating.

## II. *Dr. Rahul Vohra*

¶6. On September 8, 2017, Wheat submitted to an Employer Medical Evaluation by physiatrist, Dr. Rahul Vohra. After reviewing Wheat's pertinent medical history and conducting a physical exam, Dr. Vohra concurred with Dr. Patterson's date for MMI but determined that Wheat could return to medium-level work and lift forty to fifty pounds occasionally with limited twisting. Dr. Vohra opined that the April 2017 FCE report was invalid due to Wheat's self-limitation, and should not have been used to determine her restrictions. He assessed a two percent whole-person impairment rating. After reviewing Dr. Vohra's findings, Dr. Patterson maintained that Wheat should be restricted to light work duty to avoid further injuries.

¶7. Citing the conflicting opinions, Howard Industries motioned the Commission for an Independent Medical Evaluation (IME) on October 20, 2017; Wheat objected to an additional examination. The Commission held a hearing on the matter on November 17, 2017, and ordered Wheat to undergo an IME of her condition by physiatrist Dr. Phillip J. Blount.

## III. *Dr. Phillip Blount*

¶8. Dr. Blount performed the IME on January 19, 2018. Wheat gave an oral medical history and submitted to a physical examination. Dr. Blount was also provided with her medical records for review. Consistent with the findings of Dr. Patterson and Dr. Vohra, he

3

determined that Wheat had reached MMI, but he did not assign any limitations or work restrictions based on Wheat's injury. Mirroring Dr. Vohra's finding, Dr. Blount assessed a two percent whole-person impairment rating for Wheat's injury.

¶9.    In addition to the medical testimony, the AJ heard and considered live testimony from Wheat; Angela Malone, a vocational rehabilitation expert; Pete Mills, a rehabilitation expert; and John Risher, the health and safety manager at Howard Industries.

### IV.    *Testimony of Sicily Wheat*

¶10.    Wheat testified regarding the circumstances surrounding her injury. She provided her work history and discussed her interactions with the treating physicians. Wheat acknowledged that she had indeed returned to work on two occasions following her initial injury, and she was still employed with Howard Industries at the time of the hearing.[2] She testified that when she returned there were additional personnel to assist her in her capacity as coil helper, whereas she had completed the job alone prior to her injury. Wheat claimed that the other personnel members accommodated her restrictions and assisted her with lifting when she asked. Notably, Wheat was earning a higher hourly wage than she had at the time of her injury.

### V.    *Testimony of Angela Malone*

¶11.    At the hearing, Malone testified that she had met with Wheat to assess her

---

[2] Following her injury, Wheat initially returned to work on January 9, 2017, with the restriction of working four hours per day. In May 2017, Wheat resumed working regular hours in her previous capacity. On June 12, 2017, she was reassigned to the position of sheeter operator, which required more stooping but less heavy lifting. On June 28, 2017, Wheat was sent home again after complaints of continued pain; she did not return until January 2018 after Dr. Blount released her to full work duty.

employability, post-injury wage-earning capacity, and loss of access to the job market. Malone prepared a "Vocational Rehabilitation Evaluation" on August 30, 2017. As a basis for her findings, Malone reviewed Wheat's medical records from Dr. Patterson and the FCE report. Malone did not review the reports of Dr. Vohra or Dr. Blount for her analysis. Malone also met with Wheat to ascertain additional details about her health and injury status, pre-injury experience and job titles, and post-injury skills and abilities. Malone performed a job survey based on the information she gathered and ultimately determined that because of Wheat's back injury, she had suffered a twenty-five percent loss of access to her past occupational group and a thirty-seven percent loss of all job titles in the competitive job market. Malone also performed an earning analysis and found that Wheat's average weekly wage earning capacity had decreased from $702.20 to $462.00 as a result of her injury.

## VI.    *Testimony of Pete Mills*

¶12.    Mills, another vocational expert, prepared a "Vocational Evaluation" on February 28, 2018. Mills had reviewed Wheat's medical records, the FCE report, and other documents related to her claim. He opined that the tasks required for the coil helper position would fall within the physical restrictions given by Dr. Vohra and Dr. Blount.

## VII.    *Testimony of John Risher*

¶13.    Risher testified that although additional personnel were hired in the same capacity as Wheat, no one was designated to assist her in any way. He also acknowledged that he was aware of Wheat's restrictions and stated that some of the additional personnel had been hired to replace Wheat during her absence.

5

**VIII.** *AJ's Order*

¶14.   On July 26, 2018, the AJ entered an order, finding that because Wheat had returned to work successfully on two occasions and was currently still employed with Howard Industries at the time of the hearing, she had not suffered a "discernable loss of wage earning capacity" because she was still employed in her pre-injury position for equal or higher wages.

¶15.   The AJ also made a specific finding "that should she (Wheat) lose her . . . position at Howard Industries, her loss of access [would] hinder her in any effort to find alternate employment."  Wheat was awarded temporary total disability benefits from July 18, 2016, to May 1, 2017, with credit given to previous payments made during the designated time frame.   Howard Industries terminated Wheat six months post-hearing,[3] citing a misrepresentation of her criminal history on her employment application as cause.[4]

**IX.**   *Full Commission's Order*

¶16.   On August 2, 2018, Wheat petitioned the full Commission for a review of the AJ's decision, alleging that the AJ's findings and opinions were (1) contrary to the evidence, (2) contrary to the law, and (3) not supported by substantial evidence.[5]  Howard Industries

---

[3] Wheat's successful return to work lasted from January 2018 to July 2018; she was terminated before the AJ issued an order on the hearing.

[4] In deposition transcript corrections related to the instant compensation claim, Wheat revealed that she neglected to disclose a prior arrest for assault in the initial deposition; she could not remember the disposition of the case or whether it had been expunged.  Howard Industries obtained court records from the Laurel Municipal Court to confirm that Wheat was in fact convicted of simple assault on August 21, 2000, after entering a guilty plea; no sentence or fine was noted on the court abstract.

[5] Wheat motioned the Commission to admit additional evidence on review: (1) Wheat's post-hearing termination from Howard Industries, and (2) a supplemental

maintained that it had not provided accommodations for Wheat, and that Wheat was ultimately terminated for falsifying her employment application, not in relation to her disability.

¶17. The Commission reversed the AJ's order, finding that Wheat's post-hearing termination was "suspect at best" and that Howard Industries had provided accommodations for Wheat upon her return to work. Based on its finding, the Commission determined that the facts establishing a "successful return to work" had changed and defeated the presumption of no loss of wage earning capacity contemplated by the AJ's order.

¶18. With the presumption invalidated, the Commission analyzed the factors to determine loss of wage earning capacity. All three medical examinations and Malone's vocational report were reviewed. The Commission found the opinions of Dr. Patterson and Dr. Vohra to be "more probative" than that of Dr. Blount and determined that the work injury had "decreased her ability to perform work on the open labor market." The Commission reversed the AJ's ruling and found that Wheat had established a loss of wage-earning capacity in the amount of $160.141 per week for 450 weeks. Howard Industries now appeals from the Commission's order. Wheat cross-appeals.

## STANDARD OF REVIEW

¶19. Our standard of review is limited in workers' compensation cases. *Howard Indus. Inc. v. Satcher*, 183 So. 3d 907, 911 (¶11) (Miss. Ct. App. 2016) (citing *Weatherspoon v. Croft Metals Inc.* 853 So. 2d 776, 778 (¶6) (Miss. 2003)). "The Commission is the trier and

vocational rehabilitation report in light of the termination. The Commission granted her request.

7

finder of facts in a compensation claim. Reversal is proper only when [the] Commission's order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law." *Id.* If the issue is one of law and not facts, we apply a de novo review. *Forrest Gen. Hosp. v. Humphrey*, 136 So. 3d 468, 471 (¶14) (Miss. Ct. App. 2014) (citing *Hugh Dancy Co. v. Mooneyham*, 68 So. 3d 76, 79 (¶6) (Miss. Ct. App. 2011)). "Absent an error of law, we must affirm the Commission's decision if there is substantial evidence to support [it]." *Id.*

## DISCUSSION

### I. Whether the Commission erred by placing emphasis on Wheat's subsequent termination.

¶20. On appeal, Howard Industries maintains that Wheat made two successful returns to work and was earning a higher wage post-injury. Howard Industries argues that the Commission improperly (1) dismissed the presumption that Wheat had suffered no loss of wage-earning capacity and (2) considered Wheat's post-hearing termination.

¶21. The record clearly reflects a specific finding by the AJ that should Wheat lose her position with Howard Industries, "her loss of access [would] hinder her in any effort to find alternate employment." Noting the AJ's finding, the timing of the termination, and the accommodations provided to Wheat upon her return to Howard Industries, the Commission found that "the facts as a whole" had evolved since Wheat's hearing before the AJ and warranted compensation.

¶22. There is a well settled presumption that no loss of wage earning capacity can be found when a workers' post-injury wages are equal to or exceed the worker's pre-injury wages.

8

*Lovett v. Delta Reg'l Med. Ctr.*, 157 So. 3d 90, 95 (¶20) (Miss. Ct. App. 2014) (citing *Gregg v. Natchez Trace Elec. Power Ass'n*, 64 So. 3d 473, 476 (¶12) (Miss. 2011)).  However, this presumption can be rebutted by presenting evidence that

> post-injury earnings are unreliable due to: [1]increase in general wage levels since the time of accident, [2] [the] claimant's own greater maturity and training, [3] longer hours worked by claimant after the accident, [4] payment of wages disproportionate to capacity out of sympathy to claimant, and [5] the temporary and unpredictable character of post-injury earnings.

*Weathersby v. Miss. Baptist Health Sys. Inc.*, 195 So. 3d 877, 883 (¶25) (Miss. Ct. App. 2016) (quoting *Gen. Elec. Co. v. McKinnon*, 507 So. 2d 363, 365 (Miss. 1987)).

¶23.    Following Wheat's initial hearing, the AJ found that Wheat made two successful returns to Howard Industries and was earning a higher wage post-injury.  The presumption was triggered and the AJ found that Wheat had not suffered a loss of wage-earning capacity.  The Commission disregarded the presumption, noting in its considerations that Wheat's post-hearing termination was "suspect at best" and essentially invalidated the AJ's finding that Wheat successfully returned to Howard Industries with higher post-injury wages.  Further, Wheat testified that her post-injury pay increase was a union pay raise, not meritorious, which renders it an "increase in general wage levels since the time of the accident[.]"  *Id.*  As "the ultimate finder of facts in compensation cases" the Commission was within its scope to evaluate the information before it—including Wheat's subsequent termination from Howard Industries—and render a decision.  *Natchez Equip. Co. Inc. v. Gibbs*, 623 So. 2d 270, 273 (Miss. 1993).

¶24.    With regard to the review of Wheat's termination, the record reveals substantial

evidence to support the Commission's finding that Wheat's dismissal from Howard Industries was "suspect." Despite being apprised of Wheat's failure to disclose her criminal history, Howard Industries represented that Wheat had made a "successful return to work" before the AJ, only to terminate Wheat six months later. Notwithstanding Wheat's deposition testimony, the information regarding Wheat's conviction was public record and readily accessible by Howard Industries. In fact, upon further investigation of Wheat's testimony, Howard Industries located the court abstract related to the assault charge. Armed with grounds for termination well before Wheat's hearing before the AJ, Howard Industries allowed Wheat to continue as an employee and only terminated her after receiving the benefit of her "successful return to work."

¶25. Howard Industries cites no authority that limits the emphasis or weight that the Commission was allowed to place on what it ultimately determined to be a seemingly pre-textual grounds for termination. Finding that there was substantial evidence for the Commission's decision, we conclude that this issue is without merit.

II. **Whether the Commission erred in finding Wheat suffered a loss of wage-earning capacity.**

¶26. Our Court recently recognized that "decisions as to loss of wage-earning capacity are 'largely factual and are to be left largely to the discretion and estimate of the Commission.'" *Itta Bena Plantation III v. Gates*, 282 So. 3d 721, 724 (¶10) (Miss. 2019) (quoting *Bryan Foods Inc. v. White*, 913 So. 2d 1003, 1010 (¶28) (Miss. Ct. App. 2005)). On appeal, Howard Industries asserts that the Commission erred by overruling the AJ's finding that Wheat did not suffer a loss of wage earning capacity. Howard Industries cites the fact that

Wheat returned to her pre-injury capacity earning a higher wage and the overwhelming weight of the evidence presented at the hearing in support of its position.

¶27. As discussed, supra, the Commission's finding regarding the presumption favoring Howard Industries was within its purview. Further, the Commission's decision was supported by additional evidence in the form of medical opinions from Dr. Patterson and Dr. Vohra, as well as Malone's vocational evaluation.

¶28. The Commission acknowledged the contradicting medical testimony between Dr. Vohra, Dr. Patterson, and Dr. Blount, but found the opinions of Dr. Patterson and Dr. Vohra to be "more probative." On appeal, Howard Industries seeks reversal of the Commission's findings, arguing that considerations given to conflicting reports from Wheat's doctors and Malone's vocational evaluation report were improper.

¶29. This Court dealt with an analogous set of facts in *Sanderson Farms Inc. v. Jessie*, 185 So. 3d 397 (Miss. Ct. App. 2015). Sanderson Farms challenged the Commission's ruling, citing the conflicting medical opinions of Jessie's treating physicians and improper consideration of the vocational expert's evaluation report. *Id.* at 401 (¶12).

¶30. As in *Sanderson*, we note the stark differences in the medical opinions offered for review, and we are compelled to defer to the Commission as the ultimate fact finder. *Id.* at 403 (¶22) (citing *Barber Seafood Inc. v. Smith*, 94 So. 2d 454, 461 (¶27) (Miss. 2001)). "Where medical expert testimony is concerned, our supreme court has held that whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant." *Id.* (quoting *Raytheon Aerospace Support Servs. v. Miller*,

11

861 So. 2d 330, 336 (¶3) (Miss. 2003)). Here, the Commission was within its scope to weigh the differing opinions of Dr. Patterson and Dr. Vohra more heavily than that of Dr. Blount.

¶31.    This Court also rejected Sanderson Farm's argument that the Commission erred by considering the vocational expert's evaluation, which failed to consider *all* of the doctors' reports. *Id*. at 403 (¶23). Howard Industries makes the same argument and seeks to dismiss Malone's evaluation for failure to consider the medical records provided by Dr. Blount and Dr. Vohra in her initial evaluation. However, as in *Sanderson*, 185 So. 2d at 403 (¶24), Malone reviewed the omitted records after issuing her evaluation and maintained that she agreed with Dr. Patterson's recommendation. Further, the Commission was aware of the omitted considerations and is "the ultimate judge of the credibility of witnesses." We find that this issue is without merit.

### III.    Whether the Commission should have found that Wheat is permanently totally disabled.

¶32.    On cross-appeal, Wheat seeks review of the Commission's failure to award her permanent total disability benefits. "A worker injured in the course and scope of her employment is entitled to compensation 'to the extent that she has been incapacitated to earn wages.'" *Lifestyle Furnishings v. Tollison*, 985 So. 2d 352, 359 (¶18) (Miss. Ct. App. 2008) (quoting *Marshall Durbin Inc. v. Hall*, 490 So. 2d 877, 880 (Miss. 1986)). To support a claim for permanent total disability benefits, Wheat had "the burden of proving [the] disability and the extent thereof." *Id*. at (¶21) (citing *Am. Potash & Chem. Corp. v. Rea*, 228 So. 2d 867, 868 (Miss. 1969)). Wheat argues that under the framework of *Jordan v. Hercules Inc*. 600 So. 2d 179 (Miss. 1992), and *Thompson v. Wells-Lamont Corp*., 362 So.

12

2d 638 (Miss. 1978), she made a prima facie showing that she "has been unable to find work 'in the same or other employment.'" *Tollison*, 985 So. 2d at 359 (¶21) (quoting Miss. Code Ann. § 71-3-3(i) (Rev. 1995).

¶33.    Howard Industries argues that Wheat's failure to make a "reasonable [or any] efforts to find other employment" defeats her claim for permanent total disability. *Id*. Wheat contends that the job search requirement should be waived in light of her suspect termination from Howard Industries.

¶34.    "A claimant is totally disabled if she is disqualified for regular employment in the labor market"[6] however, the Commission found that Wheat's "work-injury has decreased her ability to perform work on the open labor market," not disqualified her. The Commission relied on Malone's finding that Wheat, with her injury, was capable of earning $462.00 per week post-injury.

¶35.    Although Howard Industries effectively thwarted Wheat's "successful return to work" by terminating her, Wheat fails to show an inability to find other reasonable employment. Malone's report indicates that Wheat is capable of finding work in the open labor market. Despite the opportune period between Wheat's termination and the Commission's review, Wheat failed to conduct any job search of her own. It is clear that "[t]he Commission considered the evidence as a whole and found that no presumption of permanent, total disability arose" and "that the evidence substantially supported the Commission's conclusion such that the conclusion was a legitimate exercise of the Commission's decision-making

---

[6] *Tollison*, 985 So. 2d at 360 (¶25) (citing *Rolling v. Hatten & Davis Lumber Co.*, 226 Miss. 732, 741, 85 So. 2d 486, 489 (1956)).

13

authority." *Id.* at 361-62 (¶¶28, 30). We find that there was substantial evidence to support its finding. Accordingly, we will not reverse the Commission's decision.

**IV.** **Whether Howard Industries' termination of Wheat under "suspect" circumstances should be taken as an admission by conduct that she is permanently and totally disabled.**

¶36. On cross-appeal, Wheat urges this Court to "establish a public policy" that would render Howard Industries' "suspect" termination of her an admission that she is permanently and totally disabled.

¶37. Wheat makes this argument for the first time on appeal, barring it from consideration by this Court which has consistently held "that we need not consider matters raised for the first time on appeal[.]" *Anglin v. Gulf Guar. Life Ins. Co.*, 956 So. 2d 853, 864 (¶26) (Miss. 2007) (quoting *Alexander v. Daniel*, 904 So. 2d 172, 183 (¶26) (Miss. 2005)). Further, Wheat cites no supporting legal authority or rules in support of her contention. Absent authority, her argument is waived. M.R.A.P. 28(a)(7); *see also Taylor v. Kennedy*, 914 So. 2d 1260, 1262 (¶4) (Miss. Ct. App. 2005) (citing *United Plumbing & Heating Co. v. Mosley*, 835 So. 2d 88, 92 (¶8) (Miss. Ct. App. 2002) ("Failure to cite any authority is a procedural bar, and this Court is under no obligation to consider the assignment.")).

¶38. After a thorough review of the record, and for the reasons stated above, we do not find that the Commission lacked substantial evidence to support its decision. Accordingly, we affirm the Commission's judgment.

¶39. **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, TINDELL, McDONALD AND McCARTY, JJ., CONCUR. C. WILSON, J., CONCURS IN PART AND IN THE**

**RESULT WITHOUT SEPARATE WRITTEN OPINION. J. WILSON, P.J., AND LAWRENCE, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**